STATE NAT. BANK OF FT. WORTH v. VICKERY. (No. 18-2611.)

(Commission of Appeals of Texas, Section A. Dec. 11, 1918.)

1. PRINCIPAL AND SURETY ⟷59—CONSTRUCTION OF CONTRACT.

The rule that surety contracts will be strictly construed applies only after the legal scope or effect of the terms used is determined by an application of the same rules of construction that are applied to any other character of contract.

2. PRINCIPAL AND SURETY ⟷59—CONSTRUCTION OF CONTRACT.

Surety contracts will be strictly construed, merely that the obligation of the surety shall not be extended by implication or presumption, and not to relieve the surety from an onerous condition or obligation.

3. PRINCIPAL AND SURETY ⟷59—CONSTRUCTION OF CONTRACT.

A suretyship contract is to be interpreted with a view of ascertainment of the intent of the parties, the same to be gathered from the language of the instrument in its entirety, and where necessary resort may be had to the purpose of the parties in the making of the contract.

4. BILLS AND NOTES ⟷396—LIABILITY OF INDORSER—CONDITIONS.

An indorser's liability is contingent upon presentment of note for payment, and in event of nonpayment, protest, and due notice to indorser.

5. BILLS AND NOTES ⟷396—INDORSER'S LIABILITY—CONDITIONS—STRICT COMPLIANCE.

Strict compliance with conditions upon which indorser's liability is contingent is essential in order to hold the indorser.

6. BILLS AND NOTES ⟷301—EXTENSION OF TIME OF PAYMENT—CONSENT OF INDORSER AND SURETY.

Time of payment must not be extended without the consent of the indorser and surety.

7. BILLS AND NOTES ⟷422(1)—INDORSER'S LIABILITY — WAIVER — PRESENTMENT — PROTEST—NOTICE.

The waiving of presentment for payment, protest, and notice does not increase the original liability of the indorser, but merely renders unnecessary the performance of these acts to fix such liability.

8. PRINCIPAL AND SURETY ⟷129(4)—LIABILITY OF SURETY—EXTENSION OF TIME OF PAYMENT—"TO EXTEND."

The time for payment on a note, providing that "time of payment may be extended without notice thereof," could be extended from time to time without releasing the surety, surety having consented not merely to one extension, but that time of payment could be prolonged or continued as agreed upon between maker and holder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Extend.]

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the State National Bank of Ft. Worth against R. Vickery and others. Judgment for plaintiff against defendant named, and, on appeal by first-named defendant, the Court of Civil Appeals reversed judgment against the first-named defendant and rendered judgment in his favor (159 S. W. 874), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and that of lower court affirmed.

W. B. Paddock, F. M. Bransford, and Theodore Mack, all of Ft. Worth, for plaintiff in error.

Orrick & Terrell, of Ft. Worth, for defendant in error.

SONFIELD, P. J. Suit by plaintiff, the State National Bank of Ft. Worth, against George Bury and W. S. Heaton, as principals, and R. Vickery, as surety, on a promissory note. A trial before the court without the intervention of a jury resulted in judgment discharging Bury and in favor of plaintiff against the other two defendants. From this judgment, defendant Vickery alone appealed. The Court of Civil Appeals reversed the judgment against defendant and rendered judgment in his favor. 159 S. W. 874. The note in suit contained the following provision:

"The makers and all indorsers hereof severally waive presentment for payment, protest, and notice of protest and consent that time of payment may be extended without notice thereof."

The court finds that there were eleven extensions of time of payment of the note; that, at the time of the several extensions, interest was paid in advance to the time when payment was extended; defendant had no notice of the extensions and did not consent to same; and that plaintiff had knowledge that defendant signed the note as surety.

---

The question involved is whether the stipulation that "time of payment may be extended without notice thereof" permits more than one extension of time of payment without the consent of the defendant as surety.

The question has never been determined in this state. Notes containing provision waiving all defenses growing out of "any extension" of time of payment have been construed by the courts of several states, some holding that the provision permitted of but one extension, others that the right was not so limited. Some of these cases and cases dealing with similar provisions in other character of contracts are cited and quoted from in the opinion of the Court of Civil Appeals. The case of Rochester Saving Bank v. Chick, 64 N. H. 410, 13 Atl. 872, is in largest measure relied upon by defendant and is approved and followed by the Court of Civil Appeals. The note stipulated that "all signers agree to be holden should the time be extended." The note had been extended several times, and Clark, one of the defendants, pleaded that he signed the same as surety and was released through such extensions of time. The court said:

"The time of payment fixed upon in the note is six months, and the agreement, 'to be holden should the time of payment be extended,' naturally and by the ordinary force of language and taken in connection with the first part of the note, means a reasonable extension for a definite time, and not a series of extensions indefinite in number and endless in repetition. When the plaintiffs, at the end of six months from the date of the note, extended the time of payment for a definite period of time, the extension was in accordance with the agreement of all parties; all parties were bound by it, and the defendant Clark was not thereby discharged. But the agreement in the note was met and satisfied by such an extension. Any further extension, upon a valid consideration and binding upon the plaintiffs, made without the consent of the surety, had the effect of discharging him."

The case of Bonart v. Rabito, 141 La. 970, 76 South. 166, not cited in the briefs or called to the attention of the court in argument, involved the release of an accommodation indorser on the ground that several extensions of the time of payment had been granted. The note sued upon contained the following stipulation:

"The makers, indorsers, guarantors, and sureties of this note hereby severally * * * consent that time of payment may be extended without notice thereof."

The court reviews the case above cited and the other cases relied upon by defendant. Construing this stipulation, the court said:

"We cannot conceive of any reasonable theory on which to hold that the indorser's consent, as expressed in the note sued on, authorized the payee to grant the maker only one extension of the time of payment, however long, and did not authorize two extensions, however short. To maintain such a doctrine would lead to the anomalous conclusion that the indorser would not have been released if the payee had granted to the maker of the note, without notice to the indorser, one extension of the time of payment for one year, but that she would have been released by the granting of two extensions, for one month, or one week, or one day each. Our interpretation of the indorser's consent that time of payment might be extended without notice thereof is that the payee and the maker of the note could agree to extend the payment from time to time without notice to the indorser and without releasing her from liability, unless and until at any time after maturity she saw fit to pay the note and become immediately subrogated to a right of action against the maker."

In City of Madison v. American Sanitary Engineering Co., 118 Wis. at page 512, 95 N. W. at page 1108, the Supreme Court of Wisconsin, answering a contention of a surety on a contractor's bond, said:

"It is contended that the contract was materially altered by the second extension of time granted by the city, because the contract only provides for one extension of time. The contract says that the time for completion 'may be extended only by the previous written consent of the mayor and city engineer for good cause shown.' This does not say that there can be but one extension either in direct terms or by implication. Such a construction is not warranted by the words, and is, in our judgment, unreasonably narrow."

[1-3] We recognize that the rule of strict construction applies to contracts of suretyship. The rule is applied, however, only after the legal scope or effect of the terms used is determined by an application of the same rules of construction that are applied to any other character of contract. 5 Elliott, Contracts, § 3941. The rule of strict construction does not involve a departure from the general rules of construction with a view to relieving the surety from an onerous condition or obligation, but merely that the obligation of the surety shall not be extended by implication or presumption. The contract is to be interpreted with a view to the ascertainment of the real intent of the parties, the same to be gathered from the language of the instrument in its entirety; and, when necessary, resort may be had to the purpose of the parties in the making of the contract. This and similar provisions waiving presentment for payment, protest, and notice of protest, and consenting to extension of time of payment, are a comparatively recent innovation; and, in construing such provisions, regard should be had to the purpose of importing same into commercial paper.

[4-6] Through indorsement, the indorser becomes contingently liable for payment. The law merchant for the protection of the indorser writes into the note conditions upon which his liability becomes fixed. There must be presentment for payment, in the event of nonpayment, protest, and due notice of protest to the indorser. Strict compliance is essential in order to hold the indorser. As a further protection to both indorser and surety, the time of payment must not be extended without their consent. The law thus safeguards the rights of those not primarily liable for payment.

[7, 8] These conditions and requirements lessened to a degree the value of the paper and tended to restrict the extension of credit through this medium. To meet the exigencies of an increased and more complex com-

merce, provisions similar to that contained in the note herein were inserted. As said by the court in discussing a somewhat similar provision to determine its effect upon the negotiability of the note:

"The obvious purpose of the provision, taken as a whole, was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties upon the paper." Bank v. Kenney, 98 Tex. 293, 83 S. W. 368.

The waiving of presentment for payment, protest, and notice does not increase the original liability of the indorser, but merely renders unnecessary the performance of these acts to fix such liability. The waiver is obviously for the benefit and to the advantage of the payee or holder. The stipulation consenting that time may be extended is primarily for the benefit of the maker. It confers upon him the right by agreement with the holder to receive further extension of credit. It agrees that the original note may be given added life through extension of time of payment, thus obviating the necessity of renewal notes and continuing the liability of indorser and surety. Incidentally, the stipulation is at times a benefit to the surety, as stated by the court in Bank of Whitehouse v. White, 136 Tenn. 634, 191 S. W. 332:

"Such a provision for extension not infrequently operates to the advantage of a surety in permitting the holder, at its option, safely to give grace to the maker, on the latter's application; when otherwise, pressure for payment might come inconveniently upon both maker and surety."

With the purpose of the provision in view, there is little difficulty in the construction of the stipulation consenting that time may be extended. To "extend" is to prolong; to enlarge; to lengthen; to continue. The defendant as surety consented that the time of payment may be prolonged or continued. There is no suggestion in the stipulation of a limitation to one extension; that the consent should be exhausted with one exercise of the right conferred. There is no warrant for such construction. On the contrary, taken in connection with the language of the entire provision, it is clear that, as the indorser waived the performance of those acts necessary under the law merchant to fix his liability, the liability becoming fixed upon the execution of the note, so the indorser and surety waived their right to insist upon the time of payment remaining unchanged, and agreed that their liability should continue whatever change in time of payment might be agreed upon between the maker and holder.

The court in the case of Bank v. Chick, supra, reasoned that to construe the stipulation as granting the right to a series of extensions would enable the holder at his pleasure to keep the surety liable and forever prevent his enforcing payment against the maker or using the statute of limitation as

a defense. The court in Bonart v. Rabito, supra, in its review of the case of Bank v. Chick, answers the argument by the statement that such stipulation would not deprive the surety of the right to pay the note at its maturity and become subrogated to an immediate right of action against the maker. This right of the surety and the right given under articles 6329 and 6330, R. S. 1911, need not here be discussed or determined, for the defendant herein has not sought to avail himself of any right through payment or any right he might have under the statute. Without this stipulation, defendant would have been released; but, in the execution of the note, he consented to the extensions, waiving notice thereof, and such extensions did not release him from liability.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.