**FARMERS' STATE BANK OF MERKEL v. FIRST STATE BANK OF ABILENE. ***
**(No. 1597.)**

(Court of Civil Appeals of Texas. El Paso. March 13, 1924. Rehearing Denied April 3, 1924.)

**1. Banks and banking ⊙⟹99—President's guaranty of note held ultra vires but not illegal.**

Where note of a third person was sold by a bank to another bank, and its payment guaranteed by bank's president without authority therefor, such transaction and guaranty was ultra vires, but not illegal, within Rev. St. art. 530, providing the bank officers cannot negotiate obligations received for money loaned, unless authorized by the board of directors at a regular meeting.

**2. Corporations ⊙⟹487(1)—Ultra vires not a defense where other party has performed contract.**

A corporation cannot defend on the ground of ultra vires, where the other party to the contract has performed his obligations thereunder, and the corporation received the benefits.

**3. Banks and banking ⊙⟹101—Plea of ultra vires held no defense to action on guaranty.**

Where the guaranty of payment of a note was given by a bank to induce another bank to make a loan to a third person whereby the latter could make payment on its indebtedness to the first bank, and the money was paid directly to the first bank and applied on the third person's indebtedness, plea of ultra vires would not defeat recovery on the guaranty.

**4. Guaranty ⊙⟹91—Evidence held to warrant finding for plaintiff on issue of consent to renew guaranteed note.**

In action to recover money applied by defendant bank on an unpaid note alleged by it to have been guaranteed by plaintiff bank, evidence held to show that plaintiff's liability on guaranty of payment of a note was discharged by unauthorized renewals and extensions of payment.

**5. Guaranty ⊙⟹27, 54—Guarantor's liability not extended by implication; beneficial alteration discharges guarantor.**

Liability of a guarantor cannot be extended by implication or otherwise, and it does not matter that a proposed alteration would even be for his benefit since he may stand on the agreement.

**6. Guaranty ⊙⟹72—Condition of note held not to authorize renewal as respects guarantor; "maker."**

Where guaranty of payment of a note was collateral thereto, guarantor was not a "maker," and hence not affected by provision in note that makers and indorsers waived presentment for payment and consented that time of payment could be extended without notice; and unauthorized renewals of the note discharged liability upon the guaranty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maker.]

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by the First State Bank of Abilene against the Farmers' State Bank of Merkel. Judgment for plaintiff, and defendant appeals. Affirmed.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellant.

Dallas Scarborough and W. J. Cunningham, both of Abilene, for appellee.

HIGGINS, J. The appellee, hereinafter designated as the Abilene Bank, sued the appellant, hereinafter designated as the Merkel Bank, to recover $16,554.63.

In May, 1920, and prior thereto, the two banks were correspondents, that is to say, they sent items to each other for collection and money for deposit, and maintained accounts with each other. For some time prior to such date the S. S. S. Motor Company, hereinafter referred to as the motor company, had been a customer of the Abilene Bank, and upon the 18th of said month was heavily indebted to it; its indebtedness exceeding considerably the amount which the bank was legally authorized to lend to it. At the time Oscar Parker was the president and executive officer of the Abilene Bank and R. O. Anderson was cashier of the Merkel Bank. On May 18, Parker telephoned Anderson, and stated that he was expecting the bank examiner, and the motor company had an extended line of credit with his bank, by which is meant more than 25 per cent. of the capital and surplus according to Anderson's testimony, Parker further stated:

"I want you to handle a $25,000 note for us on these people so we can stay within the limit. I told him I did not know who they were, and that I did not know them. He told me who they were composed of. If you will guarantee the paper, we will handle it. If your bank will guarantee the paper, we will handle

---

it. I told him on the guaranty of the bank we would make the loan, and we did make it. Mr. Parker sent the note. I got a letter of guaranty. The letter which you show me is the letter I received."

The letter referred to reads:

"Abilene, Texas, May 18, 1920.
"Mr. R. O. Anderson, Cashier, Farmers' State Bank, Merkel, Texas—Dear Overton: Along the line of our conversation, I am inclosing, herewith, $25,000.00 note payable on demand executed by the S. S. S. Motor Company, a partnership owned by E. V. Sellers and E. C. Sammons, and will appreciate your handling same for us.

"They advise that they will be able to take this up within 15 days if you need it.

"We guarantee payment of this note when needed.

"Thanking you for this courtesy, we are,

"Very truly yours,
"Oscar Parker, President."

Upon receipt of this letter and note the Merkel Bank credited the account of the Abilene Bank with $25,000, and the same was promptly withdrawn by the Abilene Bank and credited upon the indebtedness of the motor company. The transaction between Parker and Anderson and their respective banks was without the knowledge or consent of the members of the board of directors of the Abilene Bank. They knew nothing about it for months thereafter, and the board never ratified the same.

The note mentioned was renewed by the motor company at intervals of from three to six months. At each renewal a new note was given by the motor company, and the one which it replaced marked paid and surrendered. The last renewal was dated September 21, 1921, for the sum of $19,000; previous payments having reduced the indebtedness to that amount. The motor company became bankrupt January 4, 1922, and the note was not paid.

On February 25, 1922, the Abilene Bank had a credit of $16,554.63 with the Merkel Bank, and upon that date the Merkel Bank applied such credit upon the unpaid last renewal note of the motor company. Whereupon the Abilene Bank brought this suit to recover the amount of such credit.

Special issues were submitted as follows:

"First. Was the original loan evidenced by the $25,000 note, dated May, 1920, made as a direct loan to the First State Bank of Abilene and for its benefit?

"Second. Was the original $25,000 note, executed in May, 1920, to the Farmers' State Bank of Merkel, renewed at any time, without the consent of Oscar Parker, president of the First State Bank of Abilene?

"Third. Was the $25,000 procured from the Farmers' State Bank of Merkel by reason of the original $25,000 note, executed in May, 1920, applied to the indebtedness then existing of the S. S. S. Motor Company to the First State Bank of Abilene?"

The first question was answered in the negative, the others in the affirmative, and judgment was rendered in favor of the Abilene Bank for the amount sued for.

[1, 2] The Abilene Bank in its pleadings, among other matters, set up that the guaranty made in its behalf by Parker was ultra vires, against public policy, illegal, and void under the statutes; also that renewals had been made of the original note without its consent whereby it was released from the contract of guaranty.

The first question arising relates to the validity of the guaranty. A distinction is recognized between a contract of a corporation which is merely ultra vires, because it is beyond its charter and statutory powers, and a contract which is not only ultra vires in the sense indicated, but in addition thereto is illegal, because contrary to public policy or express statutory provisions.

The Abilene Bank insists that the contract of guaranty is of the latter nature, because contrary to various provisions of the banking law and the law relating to corporations generally. None of the statutes quoted have the effect contended for. It is true article 530, R. S., says that no officer of a state bank shall have the power to indorse, sell, pledge, or hypothecate any note, bond, or other obligation received by the corporation for money loaned until such power and authority has been given by the board of directors at a regular meeting of the board, and such authorization spread upon the minutes, and all acts of indorsing, selling, pledging, or hypothecating without such authority so given shall be null and void. The transaction of which the guaranty in question was a part was not of the nature prohibited by said article, and the same has no application.

The transaction and guaranty was simply ultra vires and not illegal. This being its nature, the rule in this state is that a corporation will not be permitted to defend upon the ground of ultra vires where the other party to the contract has performed his obligations thereunder and the corporation has received the benefit thereof. Bank v. Greenville, etc., 24 Tex. Civ. App. 645, 60 S. W. 828; Bank v. Rice-Stix Dry Goods Co. (Tex. Civ. App.) 195 S. W. 344; Bankers' Trust Co. v. Cooper (Tex. Civ. App.) 179 S. W. 541.

[3] The record shows that the guaranty was given by the Abilene Bank for the purpose of inducing the Merkel Bank to make the loan to the motor company whereby the latter could make a payment of its indebtedness to the Abilene Bank; that the money was paid direct to the latter bank and so applied. Upon the same state of facts it has been held by high authority that the plea of ultra vires will not defeat recovery upon the guaranty. First National Bank v. Mott Iron Works, 258 U. S. 240, 42 Sup. Ct. 286, 66 L. Ed. 593; Citizens' Central Nat. Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L.

Ed. 443; Ellis v. Bank, 25 N. M. 319, 183 Pac. 34, 6 A. L. R. 166; Talman v. Rochester City Bank, 18 Barb. (N. Y.) 123.

[4] We are therefore of the opinion that the plea of ultra vires is not available to the Abilene Bank to avoid its liability upon the guaranty. But such bank asserts that it was nevertheless released from the guaranty because of subsequent renewals of the note without the consent of Parker, which renewal notes materially altered the obligation which it guaranteed by change of date, change of maturity from demand to fixed dates, change in the amount of the note from $25,000 to $19,000, and that the renewal notes bore interest from maturity instead of date as in the original note.

[5] The liability of a guarantor like that of a surety "cannot be extended by implication, or otherwise, beyond the actual terms of his engagement. It does not matter that a proposed alteration would even be for his benefit, for he has a right to stand upon the very terms of his agreement." Smith v. Montgomery, 3 Tex. 199.

"A surety is bound by the terms of his contract, and his liability cannot be extended beyond it. If the contract be altered without his consent, whether he sustain injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation." Ryan v. Morton, 65 Tex. 260.

See, also, Durrell v. Farwell, 88 Tex. 107, 30 S. W. 539, 31 S. W. 185; Donley v. Bush, 44 Tex. 8; McRae v. McWilliams, 58 Tex. 333; Bank v. Vickery (Tex. Com. App.) 206 S. W. 841.

The guaranty was to pay the original note, $25,000, of May 18, 1920, when needed. This note was not the one to which the fund in controversy was applied but a remote renewal thereof, each of which renewals were evidenced by new notes validly postponing the time of payment, and we are of the opinion that such renewal notes were not within the scope of the guaranty and the extension of the time of payment in accordance with the terms of the renewal notes released the guarantor, unless the renewals were made with the consent of Parker as the representative of the bank, or were otherwise authorized. Bank v. Vickery (Tex. Com. App.) 206 S. W. 841; sections 119, 120, Negotiable Instruments Law.

Upon the issue of consent the jury found, in effect, that upon at least one occasion a renewal had been made without Parker's consent. The finding does not indicate which renewal it was, but it evidently refers to the latter renewal or renewals.

According to the testimony of Anderson, all renewals were made with Parker's consent, but there is evidence to the contrary as to the last renewals. Parker had died prior to the trial, but the evidence that latter renewals were made without his knowledge or consent is as follows:

Judge Scarborough, a director of the Abilene Bank, testified that Anderson came to Abilene in December, 1921; that witness then learned about the transaction for the first time; that he and others were called by Parker into a consultation with Anderson about the matter; Anderson was insisting upon the bank paying the note of the motor company, that—

"Mr. Parker said, the best I remember, to Mr. Anderson, 'It is a pretty late date for you to come back on me about this matter.' * * * Mr. Parker said to Mr. Anderson, 'You have renewed this note several times without my consent,' and Mr. Anderson said he knew that he had, and he says, 'Oscar, I would not say a word to you about it if I could help it,' but he says, 'I am in trouble with the department,' and he says, 'They are about to throw me out up there, and I have got to do what I am instructed to do.'"

Mr. Sears, another director present at the meeting, testified:

"There was some discussion about the renewals. Oscar (Parker) made mention to him as to why he did not let him know sooner; that he probably could have made some other arrangement by which he could have carried that paper, and Ove (Mr. Anderson) said something back, but I was not paying a great deal of attention to it. There was something like that said. Oscar (Mr. Parker) says, 'You have renewed it a time or two'; or he said several times."

Mr. Free, the cashier of appellee, was also present, and testified:

"Mr. Parker says, 'Ove (referring to Mr. Anderson) you have waited quite a long time to present this matter; or to say anything to me about this.' * * * Mr. Parker says, 'Haven't they kept this note renewed,' and Mr. Anderson says, 'Yes, they have kept it renewed and the interest paid,' and Mr. Parker says, 'You are not treating me right to ask me to pay this note now at this late date.' He says, 'If I had known it was not paid I could have perhaps protected myself in some way,' but he says, 'It is too late.' He says, 'You are not treating me right to ask me to pay this note any more than I would be to ask you to pay the notes I hold here.' * * * Mr. Parker said, 'This note has been renewed without my knowledge of it.' I do not remember what Mr. Anderson said to that. I would not say exactly what Mr. Anderson did say at that point."

This evidence warrants a finding against appellant upon this issue of consent by Parker.

[6] But appellant asserts that the renewals were expressly authorized by a provision in the original note, which reads:

"The makers and all indorsers hereof severally waive presentment for payment, protest, and notice of protest, and hereby consent that time of payment may be extended without notice thereof."

It is contended that appellee was a maker of the note within the scope of that provision, but this is untenable. The guaranty is no part of the contract evidenced by the note, but is collateral thereto, separate, and distinct. It may be that the liability upon the guaranty was the same as an original promisor and maker, as argued by appellant, though this may be doubted in view of the terms of the guaranty, but this does not alter the fact that appellee was not a "maker" of the note. No one could properly be regarded as a maker of such note within the scope of the provision relied upon, except one whose capacity as such is disclosed by the note itself. It would be unreasonable to say that any one is to be regarded as the maker of a note, as that term is understood, under either the law merchant or Negotiable Instruments Law, whose signature and liability is in no wise evidenced by the note itself. There is no authority cited bearing directly upon this phase of the case, and we have found none. The view of this court, however, is as indicated, and upon the same we hold that the liability upon the guaranty was discharged by the unauthorized renewals and the extensions of payment evidenced thereby.

This being true, the appropriation by appellant of the funds of appellee in its possession to the payment of the motor company note on February 25, 1922, was unauthorized, and judgment was properly rendered in appellee's favor.

Affirmed.