THE TEXAS NATIONAL BANK OF BEAUMONT V. MIKE DEBES ET UX.

No. 7108. Decided November 9, 1938.
Rehearing overruled January 11, 1939.
(120 S. W., 2d Series, 794.)

*E. L. Nall* and *Geo. A. Weller,* both of Beaumont, for plaintiff in error.

*C. A. Lord* and *J. S. Maida,* both of Beaumont, for defendants in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The facts of this case are fully set out in the opinion of the Court of Civil Appeals and will be here summarized only to the extent necessary to an understanding of the nature of the case and the questions discussed. The Texas National Bank of Beaumont, plaintiff in error, was plaintiff in the trial court and Mike Debes and Vahiba Debes, his wife, defendants in error, were defendants. The parties will be designated plaintiff and defendants as in the trial court. Plaintiff sued and recovered judgment against Mike Debes upon four notes and in addition recovered against both defendants for foreclosure of the respective liens created by two deeds of trust. The first two notes were for the sums of $6500.00 and $10,000.00, executed March 17 and March 31, 1932, respectively. The last two were for the sums of $2500.00 and $11,600.00, respectively, and both were executed April 2, 1932. All of the notes were renewals of indebtedness existing on October 10, 1930. One of the deeds of trust was executed August 11, 1930, by Mike Debes on three lots in the Gray Addition to the City of Beaumont, community property of the defendants. The other deed of trust, the one

giving rise to the questions involved, was executed on October 10, 1930, by both Mike Debes and his wife, and conveyed as security, besides certain community property lots in the Parkdale Addition to the City, lots one (1) and two (2) in block 10 of the Jirou Addition, which were the separate property of Mrs. Debes. Upon conclusion of the testimony, defendants as well as plaintiff presented a motion for an instructed verdict. Plaintiff's motion was granted and judgment pursuant to the instruction was entered decreeing a recovery in favor of the bank against Mike Debes for the full amount sued for and against both Debes and his wife for foreclosure of liens on all of the property conveyed by the two deeds of trust, including the two lots in the Jirou Addition owned separately by Mrs. Debes. The motion of defendants praying for an instruction to the effect that these lots be declared free and clear of the liens asserted by plaintiff, was denied. The Court of Civil Appeals reversed that portion of the judgment of the trial court foreclosing the lien on Mrs. Debes' two lots and rendered judgment denying a foreclosure as to them. The trial court's judgment in all other respects was affirmed. 92 S. W. (2d) 476. The case is here for review upon the application of the plaintiff bank. The ultimate question to be determined is whether the two lots in question were released from the lien created against them by the deed of trust executed by Mrs. Debes and her husband on October 10, 1930. Unless released, the trial court's judgment is in all things correct.

■ It is the contention of defendants that while the lots owned by Mrs. Debes became surety on the original note for $11,600.00 and occupied the status of any other surety by virtue of the execution of the deed of trust, the renewal and extension of the original note on April 2, 1932, by Mike Debes without Mrs. Debes' knowledge or consent, released her property from the operation of the suretyship. The contention cannot be sustained in view of the provisions of the original note set out in full in the deed of trust executed by Mrs. Debes, and in view of the provisions of the deed of trust itself. The note provides that "no extension of time of payment * * * will operate to relieve" the obligors of liability. The deed of trust provides among other things that the indebtedness evidenced by the original note "may be extended from time to time, or may be renewed, and that * * * the security herein given shall be security for any renewals or extensions made on said indebtedness, * * *." It appears from the foregoing provision that Mrs. Debes expressly agreed that her separate property should be security for any renewals or extensions of said indebtedness.

That a surety may so obligate himself is well settled. National Bank of Commerce v. Kenney et al., 98 Texas 293, 83 S. W. 368; State National Bank of Fort Worth v. Vickery (Com. App.), 206 S. W. 841; Brinker v. First National Bank (Com. App.), 37 S. W. (2d) 136. The following excerpt from the case last cited states succinctly the law upon this point:

"While an extension of time of payment between the creditor and principal debtor without a surety's consent operates as a release as to the surety (Red River Nat. Bank v. Bray, 105 Texas 315, 148 S. W. 290; Benson v. Phipps, 87 Texas 578, 29 S. W. 1061, 47 Am. St. Rep. 128), this right may be waived by such surety, either in advance or afterwards (Darby v. Bank, (Tex. Civ. App.) 253 S. W. 341; National Bank of Commerce v. Kinney, 98 Tex. 293, 83 S. W. 368; Jackson v. Bank (Tex. Civ. App.) 185 S. W. 893; Commonwealth Nat. Bank v. Goldstein (Tex. Civ. App.) 261 S. W. 538; Sharpe v. Bank (Tex. Civ. App.) 272 S. W. 321; 8 C. J. Sec. 681; 7 Cyc. 922); such waiver enters into the contract of every person who signs, whether as drawer, maker, acceptor, or indorser (Williams v. Rosenbaum (Tex. Civ. App.) 79 S. W. 594; Leeds v. Hamilton (Tex. Civ. App.) 35 S. W. 77; Daniels Neg. Inst. Sec. 1092), and permits of more than one extension of the time of payment without the consent of and without discharging the surety from liability (State Nat. Bank v. Vickery (Tex. Com. App.) 206 S. W. 841; Archenhold v. Smith, (Tex. Civ. App.) 218 S. W. 808). Such a waiver does not increase the original liability of the surety; it merely renders unnecessary the performance of the acts waived in order to fix liability. State Nat. Bank v. Vickery, supra."

■ It is also settled that a suretyship agreement authorizing the renewal and extension of an indebtedness secured by the separate property of a married woman executed by her as surety jointly with her husband as provided by Article 4623, R. C. S., is valid, and that the subsequent exercise of the authority by her co-obligor and the obligee without her knowledge and without the execution of a new deed of trust, does not release her property from the suretyship. Borden et ux v. Arnold et al., (wr. ref.) 94 S. W. (2d) 216. The suretyship agreement in question including the deed of trust conveyance, was not in effect a power of attorney from Mrs. Debes authorizing her husband to encumber her property. It was among other things a present conveyance of Mrs. Debes' property as surety made with joinder of her husband, and did not authorize future conveyance of the property by the husband

alone. No subsequent conveyance of the security was made by Mike Debes to the bank. The only subsequent agreements made by him with the bank were the renewal agreements authorized by Mrs. Debes as surety in the deed of trust of October 10, 1930.

■ Defendants also contend, and the Court of Civil Appeals upheld the contention, that the bank by stamping "cancelled" on the original $11,600.00 note and delivering it to Mike Debes contemporaneously with renewing and extending the original indebtedness, thereby released Mrs. Debes' separate property from the suretyship. This contention also is overruled. There is no claim that payment of any part of the indebtedness caused the bank to cancel the original instrument. Section 123 of Article 5939 R. C. S. (Negotiable Instruments Act) invoked by defendants is without application. It provides that when an instrument appears to have been cancelled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, to establish that it was inoperative. There is no claim by the bank or either of the defendants, nor is there any allegation, that the instrument was unintentionally stamped "cancelled," or that it was inoperative as *cancelling* the *Instrument*. When the note for $11,600.00 in lieu of the original was executed by Mike Debes, the new note by indorsement signed by him expressly provided that it was in renewal and extension of the original indebtedness. The indorsement on the renewal of the original $11,600.00 note as well as on the new $2500.00 note (except amount stated), reads:

"This instrument is given in aid and extension but not in extinguishment of the balance now unpaid on a certain note for $11,600.00 dated 10-10-30 due 90 days after date secured by D/T and the indebtedness evidenced by said note and the lien fixed by said D/T are hereby renewed, extended and perpetuated."

In view of the express renewal indorsed on the new note, the old instrument only and not the debt was cancelled. There is no evidence that the cancellation of the old instrument was not intentional, nor is there any factual basis for construing its cancellation as a cancellation of the indebtedness. The sole basis for stamping the original instrument "cancelled" was the execution of a new one by the principal who executed the original. Its indorsement conclusively shows that there was no intention to pay or extinguish the original indebtedness or release any part of the security. Under the facts stated the "cancellation" stamped on the old note together with his delivery to the obligors, was a cancellation of the instrument only. Wil-

cox v. First National Bank, 93 Texas 322, 55 S. W. 317; Belcher Land Mtge. Co. v. Taylor, 212 S. W. 647; Cooper Gro. Co. v. Strange, 18 S. W. (2d) 609. The "cancellation" referred to in Section 123 of the Negotiable Instrument Act is not one intentionally made, as in this case, but one "made unintentionally." The section is therefore without application.

■ Defendants contend that the separate property of Mrs. Debes covered by the deed of trust stood as surety for only the original $11,600.00 note and the $2500.00 note, in as much as the $10,000.00 note and the $6500.00 note were executed more than a year after the original $11,600.00 note became due. The contention cannot be upheld because of a pertinent provision of the deed of trust in question to the effect that it was understood and agreed between the parties that the security therein given should be security for not only the indebtedness evidenced by the note set out in the deed of trust, but for any other obligation of Mike Debes and his wife or either of them "whether as principal debtor or otherwise," held by the bank, whether acquired prior or subsequent to the date of the deed of trust; also that the security therein given should be security for any indebtedness which has been "contracted at the time of the delivery of this instrument." No further loans were made by the bank to Mike Debes subsequent to the execution of the deed of trust on October 10, 1930. While the renewal notes described in plaintiff's petition were executed subsequent to that date, all of the indebtedness evidenced thereby had been incurred and was existing at the time. At the time the deed of trust and the original $11,600.00 note were executed Mike Debes was further indebted to the bank in the sum of $2500.00 evidenced by a note dated August 11, 1930, renewed April 2, 1932; also in the sum of $16,500.00, later evidenced by one note dated March 17, 1932, for $6500.00, and another dated March 31, 1932, for $10,000.00. These are the four notes sued upon. The contention that the separate property of Mrs. Debes stood as surety for the indebtedness evidenced by the original $11,600.00 note only, is overruled.

The judgment of the trial court fully protected the right of Mrs. Debes to require that the community property described in the deed of trust be first sold and that the lots constituting Mrs. Debes' separate property be sold only in the event the community property should not bring a sufficient amount to satisfy the judgment.

The trial court entered a correct judgment under the undisputed facts. The judgment of the Court of Civil Appeals is

therefore reversed and reformed setting aside that portion of its judgment rendered contrary to the trial court's judgment, and is further reformed so as to make its judgment a complete affirmance of the trial court's judgment. As thus reformed the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court November 9, 1938.

Rehearing overruled January 11, 1939.