### NEECE et al. v. CARTER et al.

### No. 2104.

Court of Civil Appeals of Texas. Waco.

May 25, 1939.

Rehearing Denied June 15, 1939.

330

Williford, Williford & Bond, of Fairfield, for appellants.

Geppert, Geppert & Victery, of Teague, J. G. Anderson, of Fairfield, and L. W. Shepperd, of Groesbeck, for appellees.

GEORGE, Justice.

Lee Carter, his brothers and sisters, and his minor nephew and niece, suing by him as their next friend, instituted this suit on March 6, 1937, for partition and removal of cloud on title to fifty acres of land against J. R. Neece, Jr., his mother and three brothers, composing the part-. nership of J. R. Neece Lumber Company, and Ella Carter, surviving widow of L. C. Carter. J. R. Neece, Jr., et al., on July 8, 1937, answered and sought by way of cross-action judgment establishing indebtedness due them and foreclosure of lien on the fifty acres. The trial court rendered judgment that J. R. Neece, Jr., and others, composing the partnership of J. R. Neece Lumber Company, take nothing by their cross-action.

The fifty acres of land involved was the community property of L. C. Carter and wife, Alice Carter, and was used by them as their homestead. Alice Carter died intestate in 1915, leaving surviving her the following named children, viz.: Lee Carter, Johnnie Carter, Kirvin Carter, Hugh Carter, Shadrick (Shured) Carter, Warren Carter, Eva Carter, Annie Carter Clark, Juanita Carter Skillern, Consuela Carter Butcher, Bennie Carter and Alberta Carter. Hugh Carter, sometime thereafter, died intestate, leaving surviving him his wife, who is now Mrs. Felix Pruitt, and two minor children, viz.: Hugh Bert Carter and Emma Carter. L. C. Carter and Ella Carter were married in 1917. There was born unto that marriage two daughters, Bessie Carter and Gladys Carter

Baty. L. C. Carter died intestate in 1935. Mrs. Ella Carter (now Mrs. Ella Carter Montgomery) is residing on the fifty acres of land and is claiming L. C. Carter's one-half interest as her homestead.

L. C. Carter and Ella Carter, on October 21, 1924, executed and delivered their promissory note in the sum of $1250, payable to J. R. Neece Lumber Company on October 1, 1925, bearing interest from date at the rate of ten per cent per annum, and stipulating for ten per cent additional as attorney's fees if placed in the hands of an attorney for collection, in consideration of J. R. Neece Lumber Company agreeing to furnish the material and labor in the construction of a house on the fifty acres of land. L. C. Carter and Ella Carter on the same day and in connection therewith executed and delivered to J. R. Neece Lumber Company a mechanic's and materialman's lien on the fifty acres to secure payment of the $1250 note. L. C. Carter and Ella Carter, on November 19, 1924, executed and delivered their note for the sum of $150; payable to J. R. Neece Lumber Company on October 1, 1925, for additional material and labor to be used in making additions to the house, and executed and delivered another mechanic's and materialman's lien on the fifty acres of land. The contracts were executed and acknowledged in the manner provided by law for the creation of valid liens on a homestead before any of the material was furnished or labor done. J. R. Neece Lumber Company fully performed the obligations imposed upon it in each of the contracts. J. R. Neece Lumber Company had notice of the interest in the land of the heirs of Alice Carter, L. C. Carter and Ella Carter, on October 14, 1926, executed, acknowledged and delivered to R. D. Neece, trustee, a deed of trust on the fifty acres to secure the payment of their eight notes of that date aggregating the sum of $1650, payable to J. R. Neece Lumber Company, due November 1, 1926, December 1, 1926, January 1, 1927, and November 1, 1928, 1929, 1930 and 1931. The deed of trust recited that the eight notes were given in renewal and in extension of the amount due on the $1250 and $150 notes. The Carters paid the first four notes of the series and made certain payments on the last four. It appears that the $1250 and $150 indebtednesses are the only debts ever owed by L. C. Carter and Ella Carter to J. R. Neece Lumber Company. L. C. Carter and Ella Carter and J. R.

Neece Lumber Company, on September 21, 1931, entered into the following written agreement, to-wit:

"Whereas, on the 21st day of October, 1924, L. C. Carter and Ella Carter, his wife, did make, execute and deliver to J. R. Neece Lumber Company a certain note, payable to the order of J. R. Neece Lumber Company and described as follows:

"For the sum of Twelve Hundred Fifty Dollars ($1250.00), payable on the 1st day of October, 1925, with interest at the rate of 10% per annum from date. Said note being secured by a materialman's lien on the following described real estate, lying and being situated in the county of Freestone, state of Texas, to-wit:

"About fifty (50) acres out of the J. F. McGuffin Survey, described in said Materialman's Lien, which is recorded in Volume Two (2), page 142, Mechanic's Lien Record, Freestone County, Texas, to which record reference is here made for full description.

"And whereas, L. C. Carter and Ella Carter, his wife, are desirous of having the date of payment of the aforesaid notes extended for a period of three years so as same shall become due and payable:

"In three annual installments of $500.00 each, said total amount of $1500.00 representing unpaid principal and accrued interest to October 1st, 1931, to which extension J. R. Neece Lumber Company, the present owner and holder of said note has consented.

"Now therefore, know all men by these presents: That L. C. Carter and Ella Carter, his wife, in consideration of the extension of the date of payment of said note as aforesaid, do hereby agree to and with the said J. R. Neece Lumber Company that they will well and truly pay off and discharge the aforesaid notes, and will, in the meantime, pay the interest on same as it becomes due, according to the tenor and effect thereof. And they also agree to and with the said J. R. Neece Lumber Company that the lien given and retained to secure the payment of said notes and all of the agreements and covenants therein shall remain in full force and effect.

"Witness our hands this 21st day of September, A. D. 1931," which was duly and legally acknowledged by L. C. Carter and wife, Ella Carter. The amount of principal due at the time of the trial as evidenced by the four unpaid notes was $1060,

and the accrued interest thereon, as of January 1, 1937, was $727.62.

Appellants in their argument before this court conceded that they did not have any lien on the one-half community interest in the fifty acres of land owned by Alice Carter at the time of her death, and there is no dispute as to the facts. The question presented is one of limitation, it being claimed that the instrument of September 21, 1931 was insufficient to renew the indebtedness of $1500, due by L. C. Carter and Ella Carter to J. R. Neece Lumber Company as of October 1, 1931, because the $1250 note mentioned therein had theretofore been renewed and extended by the execution of the eight notes of October 14, 1926, and that the maturity of the indebtedness was so uncertain as to cause the indebtedness to become due on the date of the instrument, to-wit, September 21, 1931.

■ The intention of the parties is the controlling consideration in determining what indebtedness was renewed and the maturity of the installments thereof. When the intention is ascertained, that construction of the instrument which carries the intention into effect governs. Gibbs v. Barkley, Tex.Com.App., 242 S.W. 462, pars. 1 and 2; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442.

■ An inspection of the entire instrument of September 21, 1931 discloses that it was the intention of the parties to renew the balance owing by the Carters to J. R. Neece Lumber Company as of October 1, 1931 on the original indebtedness created on October 21, 1924. The original note evidencing such indebtedness is described accurately and the security is sufficiently described by a correct reference to the mechanic's lien record of Freestone county. The $1250 note of October 21, 1924 and the eight notes aggregating $1650 of October 14, 1926 are mere evidences of the indebtedness. The eight notes of October 14, 1926 and the instrument of September 21, 1931 renew and extend the time of payment of the same indebtedness, for the deed of trust of October 14, 1926 expressly states that the eight notes were given in renewal of the amount due on the $1250 note of October 21, 1924, and so does the instrument of September 21, 1931. These instruments also show conclusively that there was no intention on the part of the parties to extinguish the original indebtedness by the execution and acceptance

of the eight notes and the delivery of the $1250 note to the Carters. Texas National Bank of Beaumont v. Debes, Tex.Com. App., 120 S.W.2d 794; Cooper Grocery Co. v. Strange, Tex.Com.App., 18 S.W.2d 609; Dennis v. Bellah, Tex.Civ.App., 78 S.W.2d 653, Id., Tex.Com.App., 104 S.W. 2d 490.

It is also clear that it was the intention of the parties that the $1500 note should be payable in three annual installments of $500 each, and that the first installment should become due on September 21, 1932. This construction takes into consideration all parts of the instrument of September 21, 1931, and gives to the language used therein a reasonable and fair construction. It likewise accomplishes the purpose of the parties in executing it.

The judgment of the trial court is reversed and the cause remanded for a new trial.