**HICKOX v. HICKOX et ux.**

No. 4074.

Court of Civil Appeals of Texas. El Paso.

May 1, 1941.

Mead & Metcale, of Marfa, for appellant.

Swearingen & Bledsoe, of Marfa, for appellees.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Presidio County, Texas. Charles N. Hickox, as plaintiff, sued J. M. Hickox and Mrs. Lela R. Hickox, his wife, as defendants. Plaintiff sought recovery on a promissory note in the sum of $3,691.78, dated July 1, 1939, payable twelve months after date to the order of Charles N. Hickox, bearing interest at the rate of 8 percent per annum, alleged to have been given for value received. It is further alleged that same was secured by a certain chattel mortgage dated July 10, 1939, on 750 head of goats.

In an alternative count plaintiff alleged that on or about the 20th day of July, 1940, plaintiff and defendants entered into an agreement whereby it was mutually agreed, in consideration of the settlement and adjustment of the differences and disputes between them with reference to the note in controversy, that said note should be credited with the sum of $332; defendants agreed that they were liable for and would pay $268.78 as interest, and that plaintiff would dismiss his suit, and that the balance on the principal of the note, to-wit, $3,359.78, should be renewed and same should be in all respects a valid obligation of defendants, together with the chattel mortgage securing same; plaintiff, in consideration of the foregoing, to dismiss his suit and pay all costs and attorneys' fees therein.

Defendants answered by way of general exception, special exception and general denial. Answering specially, averred in substance that the note sued on was without consideration and executed for the purpose of lending defendants' credit to plaintiff; that at the time the note was executed and delivered it was agreed that same should be negotiated to some third party and the proceeds thereof used for the purpose of purchasing material and labor to fence certain property then used jointly by plaintiff and defendants. By way of cross-action it was alleged that plaintiff and defendant Jeff Hickox entered into a contract and agreement whereby it was mutually agreed that the parties would jointly purchase goats, and that plaintiff would furnish land in Presidio County belonging to him and said defendant would care for said goats, and plaintiff and defendant would go into the business of raising goats and mohair; that for the purpose of carrying out this agreement the parties jointly advanced in equal proportions approximately $11,000 cash, and deposited same in a bank; that out of said fund there

was purchased approximately 1,500 goats for the total sum of $4,800. It was further agreed that the profits and losses should be shared jointly in equal proportions; that the money remaining on hand after the purchase of said 1,500 goats would go for the purchase of other livestock, and the improvement of the premises on which to run them; that plaintiff spent all of the balance of said joint funds without consent of the defendant for purposes not connected with their business, except the sum of $1,000; that plaintiff likewise mortgaged the mohair to secure a personal loan of $300, and that of their joint funds of approximately $5,500, plaintiff appropriated and used same for his own private use; that plaintiff refused to account to defendant for said funds; that on or about the 1st day of July, 1939, at plaintiff's instance and request he executed the note aforesaid in order that plaintiff might negotiate same and obtain money for fencing the premises used by plaintiff and defendant in the transaction of their business; the execution and delivery of the note was wholly for the benefit of the plaintiff, and defendant never received a cent therefor; that defendant had from time to time demanded a return of his note, but never received same. Further, on the 18th day of December, 1939, all differences were settled and adjusted between plaintiff and defendant, and it was agreed that plaintiff should deliver the note in question to defendant. The note not being immediately available at the time of the settlement, that plaintiff wrote and delivered to defendant a receipt for the sum of $3,332, and another receipt for the sum of $332. It is alleged these receipts were intended and understood by the parties to constitute a full and complete settlement of any claims that might be made by plaintiff or could be made by him on said note. This answer was duly verified by defendant.

Plaintiff filed supplemental petition which contained a general demurrer, general denial, a special denial of any partnership relation, and denied the execution of any receipt but a receipt in the sum of $332.

The court sustained the demurrer urged by the defendants to the alternative plea of plaintiff; and to the third paragraph of defendants' answer the exception of plaintiff.

The defendants had filed an admission of the plaintiff's cause of action under Rule 31.

The trial was before a court and jury, submission on special issues.

The following are the issues submitted with the findings of the jury thereon:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that the note sued on was executed for the purpose of enabling Chas. N. Hickox, the plaintiff, to secure credit? Answer: Yes.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that the receipts in evidence were executed for the purpose of canceling the note sued on herein? Answer: Yes."

On this verdict the court entered judgment that the plaintiff take nothing on his cause of action against the defendants, and that defendants take nothing on their cross-action against plaintiff.

Plaintiff, at the close of all the evidence, moved the court to instruct a verdict in his favor, which was overruled, and on the return of the verdict moved the court to enter judgment in his favor, which was overruled.

Plaintiff has perfected this appeal from the judgment.

Error is assigned to the court's sustaining an exception to plaintiff's alternative plea.

In our opinion the assignment presents no error. Plaintiff's alternative plea failed to state a cause of action on the alleged compromise between plaintiff and defendant. It is lacking in an averment that plaintiff ever complied with his part of the alleged compromise. Furthermore, if there was a compromise, it affirmatively shows that the note was not due at the time the trial pleading was filed.

The serious question presented by this appeal is the effect of the admission filed by defendants to obtain the right to open and close.

It is contended by the plaintiff, and the validity of the contention conceded by defendants, that under the admission defendants could not urge as a defense want of consideration therefor. The admission certainly established that the note in question was a valid, legal obligation of the defendants at the time it was given.

In the case of Rector v. Evans, Tex. Com.App., 6 S.W.2d 105, it was held that a defense that the note was delivered on a

condition precedent would not survive an admission under Rule 31. The opinion of the Commission of Appeals in the case was expressly approved by the Supreme Court.

In the case of National Bank of Commerce v. Williams, 125 Tex. 619, 84 S.W.2d 691, the effect of an admission of this character came before the court. A reference to the opinion of the Court of Civil Appeals, 62 S.W.2d 1108, 1109, shows that the defense pleaded was as follows: "That the note sued on was executed purely for the accommodation of plaintiff bank and to enable said bank to satisfy the bank examiner and relieve its officials from criticism, and it was agreed that said bank would not look to or expect defendant to pay said note."

In the course of the opinion by the Supreme Court, it was said [125 Tex. 619, 84 S.W.2d 692]: "An examination of the bank's petition in the instant case shows that it alleged that Williams, for value received, executed and delivered to it the note made the basis of this suit. The petition contains all other formal allegations required for a petition in the district court on a promissory note. As already shown, Williams answered, setting up certain defenses, all of which denied the validity of the note in its incipiency. He pleaded no fact or circumstance which happened after its execution, as a defense thereto. Under such a record, the filing by Williams of the admission under rule 31, supra, abandoned all defenses pleaded by him."

In the case above quoted from the Supreme Court expressly overruled the case of Central National Bank of Waco v. Lawson, Tex.Com.App., 27 S.W.2d 125.

In the case last mentioned the defendant had pleaded that he was an accommodation maker for the plaintiff bank, likewise fraud and failure of consideration. The case overruled held the defense of accommodation maker and want of consideration at the inception of a note were available to the defendant despite the filing of the admission.

The case of Cramer v. Cornell, 134 Tex. 17, 130 S.W.2d 1023, was an action on a note with foreclosure of a lien. It was there held that the defense of delivery on a condition precedent to the obligation of the note would not survive the admission we have under consideration; further, that a lack of consideration, as distinguished from failure of consideration, was not available to the defendant after having filed the admission.

Before seeking to apply the foregoing principle, let us briefly examine the testimony introduced.

Defendant's theory, which he sustained by his testimony, was that there was something over $11,000 on deposit in the bank in Marfa to the credit of the plaintiff; this money belonged equally to plaintiff and defendant; it was agreed that plaintiff and defendant should go into the goat business, sharing the profits thereof equally, the goats to be placed on property of plaintiff in Presidio County, and defendant's pay for his portion of the pasture was to be by his service in caring for the goats; that in pursuance of such agreement 1,500 goats were purchased for the approximate sum of $4,-800, placed on plaintiff's ranch in defendant's care; under the agreement the balance of the money in the bank, several thousand dollars, was to be used for the prosecution of this joint business enterprise. Defendant ascertained that plaintiff had withdrawn the money from the bank and appropriated same to his own use, and in addition borrowed $300 from the bank, pledging the mohair to be produced from the jointly owned goats to secure the note. However, on the instance of plaintiff, defendant executed and delivered the note and mortgage to enable plaintiff to obtain the money to put a fence around his ranch where the goats were situated; that defendant did not receive one cent for the execution and delivery of the note and mortgage; same was executed in order that plaintiff might make the money to discharge his then obligations to defendant; that it was intended that the note should be endorsed by plaintiff and sold to some third party.

That this note was never negotiated as contemplated, and that on one or more times defendant demanded that plaintiff deliver same to him. Finally, that on or about December 18, 1939, defendant demanded the note, the note not being immediately available, plaintiff gave him a receipt as follows:

"12-18-39

"Received of J. M. Hickox $100. paid to L. A. Hickox $3232. for Goats—Total $3332.00. This amount to be deducted from note maturing July 1st, 1940 before Interest is added.

"Signed Chas N. Hickox
"Acknowledged by Jeff Hickox"

That the $100 mentioned in the receipt was $100 paid to Mrs. L. A. Hickox, the

mother of plaintiff and defendant; that there was another receipt relating to the transaction, but that plaintiff had same in his possession; that this first receipt was in full settlement of the note in question; that defendant had built a house on the premises belonging to plaintiff in Presidio County at a cost of something over $300; that defendant was to receive something like $232 therefor.

Defendant was cross-examined in regard to the following instrument:

"12–18–39.

"Received of J. M. Hickox $100.00 paid ~~in Full~~ To L. A. Hickox 232.00 For house Total $332.00 this amount to be deducted from Note maturing July 1st, 1940, before Interest is added.

"Signed Chas N. Hickox.

"Acknowledged by Jeff M. Hickox."

In this testimony it is to be noted that nowhere is it expressly or clearly stated that in consideration of the agreed surrender of the note that the witness was to forego any of his alleged claims against the plaintiff.

Plaintiff, on the other hand, testified that the money deposited to his credit in the Marfa bank was his individual money; that a ranch in Jeff Davis County had been deeded to him by his mother, and he in turn deeded the ranch to a gentleman by the name of Espy who paid him about $12,000 in cash therefor; that he took $4,800 of the money and purchased the goats in question; thereafter in consideration of the note and mortgage in question he conveyed one-half of the goats to defendant. He denied that the note was executed to enable him to procure money to fence the ranch in Presidio County, but affirmed the consideration of the note was the conveyance of the goats to defendant; that he had paid defendant $1,000 for a quitclaim deed to the ranch in Jeff Davis County which he had sold to Espy.

In regard to the first receipt copied herein, the witness testified that the following words and figures were not in the receipt when he signed same: "$3232 for goats." That the figures in the receipt at the time witness signed same were "$232"; that the words "Total $3332.00," were not in the receipt at the time he signed it; that the words "for goats" were not in the receipt at the time he signed it, and he did not write such words there.

That in the second receipt copied, the $232 therein mentioned was for a house.

The house cost defendant $332, and $100 for some reason was taken off of the cost price; that $332 constituted the item allowed for the house, and the $100 paid to Mrs. L. A. Hickox, the mother of plaintiff and defendant Jeff Hickox.

■ If we give the testimony of defendant full credence, he was the accommodation maker of the note in question and plaintiff the accommodated payee.

"Accommodation paper is a bill or note to which the acceptor, drawer, maker, or indorser, as the case may be, has put his name without consideration, for the purpose of accommodating by a loan of his credit some other person who is to provide for the bill or note when it falls due." 11 C.J.S., Bills and Notes § 737, p. 286; State Banking Board v. James, Tex.Civ.App., 264 S.W. 145.

It is elementary that an accommodation instrument creates no liability as to the maker until same is negotiated. Stated in another way, where the payee of the note is the accommodated party, and the maker the person extending the accommodation, there is no cause of action thereon in favor of the payee.

■ Under the reasoning of the preceding authorities cited herein, we hold that the defendant by his admission was precluded from urging that he was an accommodation maker, and hence there was no consideration for the note.

In our opinion Special Issue No. 1 submitted this theory and therefore is insufficient to support the judgment entered.

Sections 119 to 125, inclusive, Article 5939, R.S.1925, set forth the manner of the discharge of a negotiable instrument. Subsections 3 and 4 of Section 119 are as follows:

"3. By the intentional cancellation thereof by the holder;

"4. By any other act which will discharge a simple contract for the payment of money."

Special Issue No. 2 was evidently intended to submit the defense of cancellation provided for by subsection 3 above quoted.

■ We have been unable to find a satisfactory definition of the term "cancellation," as used in the statute. Cancellation of a negotiable instrument is a manifestation by act of intention with reference thereto to render same inefficacious as a legal obligation. This act manifesting

the intention may take several forms; for instance, the surrender of the instrument to the obligor, the erasure of the signature of the obligor, destruction of the instrument, or the marking of same cancelled. It is not necessary that a cancellation be supported by a consideration. 10 C.J.S., Bills and Notes § 475, p. 1035.

■■ If, however, it is not supported by a consideration, we take it it must be evidenced by an act putting it out of the power of the obligor to enforce the instrument. In other words, the intention must be executed. A delivery by the payee of the note to the obligor coupled with the intention that same no longer evidences an obligation would, we think, work a cancellation of the instrument regardless of whether there was a consideration. On the other hand, a mere unexecuted intention to cancel a note not based upon a valuable consideration is without legal effect.

■ It is the law that an existing evidence of a debt may be cancelled as such and a new evidence of the debt be simultaneously created without affecting the validity of the original debt. Texas Nat. Bank of Beaumont v. Debes et ux., 132 Tex. 207, 120 S.W.2d 794.

■ Defendant's explanation of the failure to deliver the note to him was that same was not immediately available. The receipts in question do not purport to cancel the note in question. Cancellation of the note without consideration was not the theory of plaintiff. This theory was not raised either by pleading or proof. If defendant pleaded a defense arising subsequent to the execution and delivery of the note it was in the nature of an accord and satisfaction. This defense, we think, is included in subsection 4 of Section 119, Article 5939.

■ Defendant pleaded that on December 18th there was a final accounting between them; that by the terms thereof no claim was thereafter to be made by one against the other. It was averred that the two receipts were understood to constitute such a settlement. The pleading is not as clear and satisfactory as it might be on this point. A receipt or written release, for that matter, does not constitute an accord and satisfaction, but may be evidence thereof.

■ Special Issue No. 2 is not a submission of an issue of accord and satisfaction. The evidence of defendant and his wife is very vague and general as to the transaction of December 18, 1939, constituting a settlement between plaintiff and defendants. In substance defendant said, on December 18, 1939, he asked plaintiff for the note and mortgage, asked for a complete settlement, and he gave him instead of the note these receipts; that he took the receipts as a full settlement; that it was a full settlement; that plaintiff said "that's full settlement in payment of the note." Some doubt is cast upon defendant's testimony in view of his other testimony in regard to the consideration for the note when given. However, if defendant gave up and released a valid claim against plaintiff in payment of an invalid note, plaintiff could hardly complain. Under defendant's testimony he did have a claim against his brother. A full settlement between parties having a contractual relationship implies an adjustment of all pending matters, the mutual release of all prior obligations existing between the parties. We think this issue was raised by the evidence, but was not submitted.

■ The rule is, the failure to request the submission of a defensive issue is a waiver thereof. However, the defenses of cancellation, renunciation and accord and satisfaction have elements in common. A cancellation may be made on account of an accord and satisfaction.

■ We hold that the matter submitted in Special Issue No. 1 was not a defense on account of the admission filed by defendants; further, the defense of cancellation was not raised by the pleading and evidence. The consequence of these holdings is that the verdict was insufficient to support the judgment rendered. However, we think justice will be best served by reversing and remanding this cause rather than reversing and rendering same. We adopt this view on account of the opinion that there is pleading and testimony tending to raise the defense of accord and satisfaction.

It is ordered that for the errors indicated the cause be reversed and remanded.

SUTTON, J., not sitting.