**GIBRALTAR SAVINGS ASSOCIATION, Appellant,**

v.

**Kenneth Wayne WATSON, et ux., Appellees.**

**No. C2729.**

Court of Appeals of Texas, Fourteenth Supreme Judicial District (Houston 14th Dist.).

Oct. 8, 1981.

John W. Berkel; Simms & Harpole, Houston, for appellant.

Larry J. Doherty, Ross A. Sears; Sears & Doherty, Houston, for appellees.

Before JUNELL, MILLER and MORSE, JJ.

JUNELL, Justice.

Appellant Gibraltar Savings Association, plaintiff in the trial court, appeals from a take-nothing judgment rendered against it on appellees' motion for judgment at the conclusion of appellant's case. We reverse and remand.

In 1969 appellant made a loan to appellees Kenneth and June Watson evidenced by a promissory note in the principal sum of $21,550. The loan was secured by the townhouse appellees purchased with the loan proceeds. Periodic payments on the loan were made monthly according to the terms of the note. In 1971 a payment in the amount of $9100 was mistakenly credited to the appellees' account. This payment was to have been credited to another customer's account bearing a number very similar to that of appellees. The appellees thereafter sold the home to the Farrishes in April, 1974.

In connection with the closing of the sale of the house, appellant calculated what appeared to be the payoff balance on the note. This payoff balance was $9100 less than it should have been due to the clerical error. Appellant received a check for the payoff balance from the title company conducting the sale and thereafter delivered the note to appellees marked "paid." The error was not discovered until sometime after the sale of the house when the customer to whose account the money should have been credited inquired as to credit for the $9100 payment. Appellant made demands of appellees for payment of the deficiency but its demands remained unsatisfied. Suit was subsequently filed by appellant in March, 1975.

At trial before the court, a copy of the note admittedly signed by appellees was introduced into evidence. Under the adverse witness rule appellees testified that they had not paid the $9100 in question. At the close of appellant's case appellees moved for judgment on the ground that Tex.Bus. & Com.Code Ann. § 3.605 (Vernon 1968) governing cancellation and renunciation of negotiable instruments permits the holder of an instrument to discharge any party, even without consideration "in any manner apparent on the face of the instrument. . . ." Additionally, they claimed that the suit was barred by the two year statute of limitations governing causes of action for mistake and error. Appellees' motion was granted on the basis that appellant failed in its burden of proof. The trial court accordingly entered a take-nothing judgment against appellant. This appeal is from that judgment.

Appellant asserts three main areas of complaint in his seven points of error. The first concerns the trial court's alleged error in finding that appellant failed in its burden of proof on the promissory note. The second concerns a like allegation with re-

spect to appellant's causes of action under the theories of assumpsit or money had and received and unjust enrichment. The third area involves the trial court's alleged error in entering the take-nothing judgment for the reason that the suit was not barred by the statute of limitations. We will first discuss appellant's contentions with respect to its first point of error.

In a trial before the court a motion for judgment at the close of the plaintiff's case is the legal equivalent of a motion for instructed verdict in a trial before a jury. *Rhinetubes, Inc. v. Norddeutscher Lloyd,* 335 S.W.2d 269 (Tex.Civ.App.— Houston 1960, writ ref'd n. r. e.). Like standards are therefore to be used by the trial court and the appellate court for determining the propriety of the action. In the trial court the motion should not be granted where reasonable minds may differ. If reasonable minds may differ, a fact issue exists and an instructed verdict is improper. *Tryad Service Corp. v. Machine Tool Center, Inc.,* 512 S.W.2d 785 (Tex.Civ.App.— Houston [14th Dist.] 1974, writ ref'd n. r. e.). The appellate court, in determining whether any material fact issue was raised, must view all the evidence in the light most favorable to the appellants, indulge every reasonable inference in favor of appellants, and disregard all contradictory evidence unfavorable to appellants. *Bradley v. Houston State Bank,* 588 S.W.2d 618 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.).

In the instant case, the trial court granted appellees' motion for judgment on the basis that appellant failed in its burden of proof on the promissory note. By this action the trial court concluded that no material fact issue existed and as a matter of law appellant should be denied any relief. To the contrary, however, in reviewing the record, we find that appellant established a prima facie case on the promissory note which would have entitled it to judgment if appellee had failed to go forward with the evidence.

Appellant brought suit on the note alleging and proving execution of the note, de-mand for payment, and non-payment of the principal sum. Because the note was a negotiable instrument, it was subject to the provisions of the Texas Business and Commerce Code. With respect to establishing a prima facie case, the code provides that when signatures are admitted, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. Tex.Bus. & Com.Code Ann. § 3.307(b) (Vernon 1968). Although appellant was not the actual physical holder of the note as the note had been delivered to appellee because of the error, it was still the payee and therefore the holder of the claim. Appellees in fact concede that appellant established a prima facie case on the note but they insist that because it was marked "paid", albeit incorrectly, appellant nevertheless surrendered its rights to sue for the amount remaining unpaid.

Appellees cite § 3.605 of the code to support their contention that they were discharged from their obligation on the note. That statute provides in relevant part:

### § 3.605 CANCELLATION AND RENUNCIATION

(a) The holder of an instrument may even without consideration discharge any party

(1) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(2) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

The word in the statute which must be given particular attention is "intentionally." The statute does not contemplate a situation like the one before this court where the instrument was "cancelled" by a "paid" mark placed on the instrument by mistake. For a party to be discharged pursuant to this statute, the holder has to perform his act of cancelling or renouncing *intentionally.*

In their brief, appellees cite a case for the proposition that a cancellation may be effective even without consideration. *Hickox v. Hickox*, 151 S.W.2d 913 (Tex.Civ.App.— El Paso 1941, no writ). That court also states however that cancellation of a negotiable instrument "is a manifestation by act of intention with reference thereto to render same inefficacious as a legal obligation." 151 S.W.2d at 917, 918.

The Texas courts have not as yet had occasion to discuss this aspect of the statute requiring that cancellation or renunciation of a negotiable instrument be done intentionally. Courts in other jurisdictions have held that under this section of the Uniform Commercial Code, the actions of the payee must have been intentional in order to constitute a discharge of the obligor. *People's Bank of South Carolina, Inc. v. Robinson*, 272 S.C. 155, 249 S.E.2d 784 (1978); *First Galesburg Nat. Bank, Etc. v. Martin*, 58 Ill.App.3d 113, 15 Ill.Dec. 603, 373 N.E.2d 1075 (1978).

In *People's Bank* a car loan secured by the car was made to the Robinsons in the amount of $2802.72 payable in 24 monthly installments. Approximately one year after the note was signed, the bank unintentionally and inadvertently marked the note and the security agreement "paid and satisfied". The Robinsons asserted that according to § 3–605(1)(b) (equivalent to § 3.605(a)(2) under the Texas code), they had been discharged entitling them to a summary judgment. The court held that these unintentional actions did not constitute a discharge. The court stated: "Commentators on the Uniform Commercial Code conclude that the courts '... have glossed this section by requiring that surrender of the instrument be accompanied by an intent to discharge the party.' J. White, R. Summers, *Uniform Commercial Code* at 447 (1972)."

In *First Galesburg Bank, supra*, the facts were similar to those in *People's Bank*. There the court held that the obligation was not extinguished when the note was stamped "paid" by mistake. They concluded that § 3–605(1)(a) requires the holder to *intentionally* cancel the instrument in order to discharge the debtor. Whether the court chooses to consider the stamping of a note "paid" as a cancellation of the instrument under § 3.605(a)(1) or as a renunciation of rights under § 3.605(a)(2), the cases hold that the discharge must be made intentionally and not as a result of mistake.

A commentary to § 3.605 has been followed by various state courts although no reference has been made to that section of the code. It provides as follows: "A cancellation made unintentionally, or under a mistake, or without the authority of the holder is inoperative. Hence an unintentional or mistaken cancellation of an instrument or a signature thereto effects no discharge thereof." R. Anderson, Uniform Commercial Code § 3.501—§ 8.406 (2d ed. 1971); *Reid v. Cramer*, 24 Wash.App. 742, 603 P.2d 851 (1979); *Pentagon Federal Credit U. v. Edwards*, 571 S.W.2d 679 (Mo.App.1978); *Rhea v. Smith*, 462 S.W.2d 78 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.). In fact the first sentence of the commentary consists of the very words appearing in the Negotiable Instruments Law section from which § 3.605 was written.[1] Although § 3.605 is now the statute in effect with respect to cancellation and renunciation, references to the prior law are valuable. Under the general provisions of the code, the draftsmen state specifically that "[U]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, princi-

1. The Texas Negotiable Instruments Law (Tex. Rev.Civ.Stat.Ann. Arts. 5932 to 5948) was repealed by the Texas legislature in 1965 at the same time that the Uniform Commercial Code was first enacted.

    Art. 5939 § 123 provided as follows:

    A cancellation made unintentionally, or under mistake or without the authority of the holder, is inoperative; but where an instrument or any signature thereon appears to have been cancelled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake without authority.

pal and agent, . . . or other validating or invalidating cause shall supplement its provisions." Tex.Bus. & Com.Code Ann. § 1.103 (Vernon 1968). In a situation like the one at hand where the language of the new statute is not identical to that of the old, the legislative intent may be determined from a perusal of the prior law.

In *Rhea v. Smith, supra,* the court's holding was not expressly predicated on § 3.605. However, not only was the statute in effect at all times material to that decision, but also the decision reflects the prevailing law in this state and in other jurisdictions. There the payees of a note signed a release of the obligations on the mistaken belief that the note had been fully paid. The bank which had been authorized to draw drafts on the makers' account for the payments on the note calculated an incorrect payoff balance. When the bank discovered the error, the makers refused to pay the unpaid amount of $2363.88. The court stated:

> Cancelling and surrendering the note on the payment of such sum less than the amount due as a result of the error and miscalculation in figuring interest and not because of any dispute and controversy between the parties does not amount to, and effect an accord and satisfaction. . . . The claim is not discharged by the acceptance by the creditor of a sum less than the amount actually due as a result of oversight on his part or mistake as to the amount of the debt. 462 S.W.2d at 80.

Appellant having proved a cause of action on the note which was not cancelled by the "paid" stamp or its delivery to appellees, we find it unnecessary to discuss appellant's points of error concerning the theories of assumpsit and unjust enrichment.

■ We will only briefly comment on the limitations question. Appellant's suit was on the note and was hence an action for debt where the indebtedness is evidenced by or founded upon a contract in writing, requiring the application of the four year statute of limitations. Tex.Rev.Civ.Stat. Ann. Art. 5527 (Vernon 1958). Appellant's

cause of action did not mature until the $9100 was actually disbursed to the appellees after the closing of the sale of the house. Had appellant discovered the error prior to that time, it would have had no cause of action against the appellees since an incorrect payoff balance would not have been given and appellees' remaining obligation on the note would have been greater. This would have resulted in appellees' receiving a check from the title company for an amount $9100 less than they actually received. Since the closing did not occur until April 1974 and the suit was filed in March 1975, appellant's suit was not barred by the statute of limitations.

Appellees rely on *Hull v. Freedman,* 383 S.W.2d 236 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.) for their contention that the two year statute of limitations applies in an action for the recovery of money paid under mistake. In light of what we have concluded in the prior paragraph regarding the accrual of the cause of action in April 1974, appellant's suit, filed less than one year later, would have been in compliance even with the two year limitations statute. Still, *Hull* may be distinguished from the case at hand because there the court specifically excepts from its rule actions for debt evidenced by a contract in writing. Additionally, the suit in *Hull* brought by the lessees of an oil and gas lease was to recover excess payments made to the lessors. The court held that the four year statute of limitations was not applicable because in order for an action to be founded upon a written contract, "the written instrument relied upon must itself contain a contract to do the thing for the nonperformance of which the action is brought". 383 S.W.2d at 238. There the lease contract placed no duty on the lessors and there was no failure of performance on their part. In the case before this court, the promissory note evidenced the contract to do the thing for the nonperformance of which the action was brought, to wit, the payment of the principal sum. For that reason the four year statute was the applicable limitations period and appellants' suit was filed within that time.

The trial court having erred in granting appellees' motion for judgment, we remand the case to the trial court for a new trial. At that time appellees' defensive plea of equitable estoppel may be considered by the trier of fact.

Reversed and remanded.