G.E. CAPITAL MORTGAGE SERVS., INC. v. NEELY

[135 N.C. App. 187 (1999)]

G.E. CAPITAL MORTGAGE SERVICES, INC., Plaintiff v. JAMES E. NEELY and
WYLENE NEELY, Defendants

No. COA98-1343

(Filed 5 October 1999)

## 1. Mortgages— erroneous cancellation of deed of trust—no issues of fact

There were no issues of fact in an action seeking a declaratory judgment that an erroneously ·canceled note and deed of trust was valid and enforceable where defendants argued that there was an issue as to whether the note was paid, given that it was marked "Paid and Satisfied," but defendants admitted that the note was never paid and that plaintiff had canceled the debt in error. Defendants also raised a factual issue as to whether plaintiff was a "holder" of the note, but plaintiff did not dispute that it did not have possession of the note after sending it to defendants. The only issues were the purely legal ones of the effect of the note being marked "Paid and Satisfied," and the effect of plaintiff's lack of possession on its ability to enforce the note.

## 2. Negotiable Instruments— note—cancellation—clerical error—debt not discharged

The trial court correctly concluded that a note which had been mistakenly canceled and surrendered was still valid; cancellation and surrender of a promissory note due to clerical error or mistake alone does not provide the requisite intent to effectively discharge the debt represented by that note. N.C.G.S. § 25-3-604.

## 3. Mortgages— anti-deficiency statute—not applicable

The anti-deficiency statute, N.C.G.S. § 45-21.38, was not applicable to an erroneously canceled note because that statute applies only to purchase-money mortgages and the record here does not reflect that the loan was used to acquire defendants' real property. Moreover, that statute only applies where the purchase-money mortgagee is the seller.

## 4. Mortgages— deed of trust—erroneously recorded cancellation—reinstated

The trial court did not err by reinstating a deed of trust where the deed of trust was erroneously canceled and a Notice of Satisfaction was filed with the register of deeds. No third party

relied on the mistakenly recorded cancellation, defendants admitted that they had never paid off the underlying debt, and plaintiff realized its error and took steps to correct it in a timely fashion. The equities in the case warrant that the deed of trust be reinstated.

### 5. Negotiable Instruments— mistakenly canceled note—returned to debtor—enforcement

Plaintiff was entitled to enforce a note and deed of trust where the note had been mistakenly canceled and returned to the debtor and defendants argued that plaintiff had forfeited its status as a holder. The party suing has to overcome a presumption that the instrument was discharged where the obligor has possession, but proof that the debtor never satisfied the underlying obligation can meet that burden. Additionally, the underlying obligation here was not discharged and plaintiff could recover under general contract law and not rely solely on the law of negotiable instruments.

Appeal by defendant from judgment entered 6 August 1998 by Judge W. Erwin Spainhour in Rowan County Superior Court. Heard in the Court of Appeals 18 August 1999.

*Poyner and Spruill, L.L.P., by Anna S. Gorman and Constance L. Young, for plaintiff-appellee.*

*Hancock and Hundley, by R. Darrell Hancock and George R. Hundley, for defendant-appellants.*

LEWIS, Judge.

This case deals with the issue of an attempted reinstatement of a Note and Deed of Trust after both were erroneously canceled by the creditor-mortgagee. This issue is one of first impression in North Carolina.

On 26 April 1985, defendants James and Wylene Neely borrowed $28,500 from the North Carolina Federal Savings and Loan Association, executing a Promissory Note in that amount. This Note was secured by a Deed of Trust on their home at 119 Division Avenue, East Spencer, North Carolina, which was promptly recorded with the Rowan County Register of Deeds. The Note and Deed of Trust were subsequently assigned to plaintiff G.E. Capital Mortgage Services, Inc.

G.E. CAPITAL MORTGAGE SERVS., INC. v. NEELY

[135 N.C. App. 187 (1999)]

In 1996, when defendants' loan balance was $25,090.08, plaintiff mistakenly applied a payment of $24,035.16 to defendants' account. After adding amounts in escrow, plaintiff sent defendants a letter stating that $979.48 was needed to fully satisfy their debt. Having already made a payment of $283.43 in the interim, defendants promptly sent plaintiff a check for the $696.05 difference, even though they knew their account balance was substantially more than that. Plaintiff thereafter marked both the Note and Deed of Trust "Paid and Satisfied" and sent them to the defendants, who took them to the Register of Deeds where the cancellation was made of record.

Plaintiff subsequently realized its error, adjusted the account to reflect the true balance owed, and filed a Rescission of Satisfaction and Reinstatement of Mortgage with the Register of Deeds. On several occasions, plaintiff demanded that defendants continue making their regular mortgage payments; defendants refused every request. Plaintiff then filed this action on 15 October 1997, seeking (1) a declaratory judgment that the Note and Deed of Trust were still valid and enforceable and (2) a money judgment in the amount of $29,004.00 (the unpaid balance plus late charges and interest accrued). From an order of summary judgment in favor of plaintiff on both claims, defendants appeal. We affirm.

[1] Initially, defendants contend that factual issues exist such that summary judgment was improper. We disagree. The standard for summary judgment has often been recited by this Court. Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, a party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of *material* fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990) (emphasis added).

Defendants argue that there remains an issue as to whether the Note was in fact paid, given that it was marked "Paid and Satisfied." They attempt to analogize this case to *Bank v. Construction Co.*, 46 N.C. App. 736, 266 S.E.2d 1 (1980), in which a note was also erroneously marked "paid." There we held that summary judgment was improper because a factual issue existed as to whether or not the note had been paid. *Id.* at 738, 266 S.E.2d at 2. In that case, however, the dispositive fact was not that the note had been marked "paid," but that one of the debtors testified he knew the note was paid. *Id.* Here we have no such testimony; indeed, defendants admit that the Note

was never paid and that plaintiff had canceled their debt in error. Accordingly, the only issue remaining is purely a *legal* one, namely the *effect* of the Note being marked "Paid and Satisfied."

Defendants also assert that the fact plaintiff was not in possession of the Note raises a factual issue as to whether plaintiff was a "holder" of the Note entitled to enforce it. However, plaintiff does not dispute that it did not have possession of the Note after sending it to defendants. Again, the only dispute between the parties is a *legal* issue: the *effect* of plaintiff's lack of possession on its ability to enforce the Note.

Defendants argue that both the Note and the Deed of Trust are null and void as a result of plaintiff's mistaken cancellation. Because the Note and Deed of Trust represent differing rights and obligations, each instrument will be analyzed separately.

[2] We begin with the Note. Defendants maintain that the underlying obligation was discharged, thereby extinguishing the Note. We disagree. Discharge of instruments is controlled by N.C. Gen. Stat. § 25-3-604, which mirrors revised Article 3, § 604 of the Uniform Commercial Code ("UCC"). Under the relevant subsection, an underlying obligation is discharged "by an *intentional* voluntary act, such as surrender of the instrument." N.C. Gen. Stat. § 25-3-604(a) (1995) (emphasis added). Our courts have not yet had occasion to construe this subsection in the context of mistakenly canceled notes. The Official Commentary to § 25-3-604 provides no guidance, so we look to other jurisdictions that have analyzed similar statutory provisions. We now join the overwhelming majority of those jurisdictions and hold that cancellation and surrender of a promissory note due to clerical error or mistake alone does not provide the requisite intent to effectively discharge the debt represented by that note.

As a preliminary consideration, we note that most courts considering this issue have been construing statutory provisions mirroring the pre-1990 version of Article 3. That version stated:

(1) The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or the indorsement, as by *intentionally* cancelling the instrument . . . .

6A Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 3-605, at 375 (3d ed. 1998) (emphasis added). North Carolina, too, employed this provision until 1995, when our legislature codified the Revised Article 3 version. Despite different wording between the respective sections of the pre-1990 and revised versions of Article 3, we note one significant parallel: both require an intent to cancel. This intent requirement has led courts, whether construing the pre-1990 or revised Article 3, to conclude that mistakenly marking a note "paid" (or the equivalent) will not discharge the debt.

In *Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650 (Tex. App. 1981), the Texas Court of Appeals dealt with an analogous set of facts. The Watsons borrowed $21,550 from Gibraltar Savings Association ("Gibraltar"), using their townhouse to secure the promissory note. *Id.* at 651. Sometime later, a payment of $9100 was mistakenly credited to their account. *Id.* The Watsons eventually sold the townhouse, using the sale proceeds to pay off the loan balance. *Id.* However, this balance was $9100 less than it should have been because of the clerical error. *Id.* As a result, Gibraltar marked "paid" on the note and subsequently turned it over to the Watsons. *Id.* Gibraltar thereafter realized its error and demanded payment of the $9100. *Id.* The Watsons knew the $9100 had never been paid, but still refused to comply with Gibraltar's demands. *Id.* The Texas court held that the mistaken cancellation had not effectively discharged the debt. *Id.* at 652-53. In analyzing the UCC's intent requirement, the court stated:

> The word in the statute which must be given particular attention is "intentionally." The statute does not contemplate a situation like the one before this court where the instrument was "cancelled" by a "paid" mark placed on the instrument by mistake. For a party to be discharged pursuant to this statute, the holder has to perform his act of cancelling or renouncing intentionally.

*Id.* at 652. Other courts have used similar reasoning to arrive at the same conclusion. *See, e.g., Columbia Sav. v. Zelinger*, 794 P.2d 231 (Colo. 1990); *Gover v. Home & City Sav. Bank*, 574 So. 2d 306 (Fla. Dist Ct. App. 1991); *First Galesburg Nat'l Bank & Trust Co. v. Martin*, 373 N.E.2d 1075 (Ill. App. Ct. 1978); *Richardson v. First Nat'l Bank*, 660 S.W.2d 678 (Ky. Ct. App. 1983); *Firstier Bank v. Triplett*, 497 N.W.2d 339 (Neb. 1993); *Los Alamos Credit Union v. Bowling*, 767 P.2d 352 (N.M. 1989); *Peoples Bank v. Robinson*, 249 S.E.2d 784 (S.C. 1978). Because plaintiff's mistaken cancellation and surrender of the Note here was not accompanied by the requisite intent to dis-

charge, the trial court was correct in concluding that the Note was still valid.

**[3]** Defendants also contend that, notwithstanding the validity of the Note, plaintiff cannot sue on the Note because of the anti-deficiency judgment provisions in N.C. Gen. Stat. § 45-21.38. However, defendants have misread the statute. Generally speaking, a creditor-mortgagee such as plaintiff has an election of remedies. Upon default, it may sue to collect on the unpaid note or foreclose on the land used to secure the debt, or both, until it collects the amount of debt outstanding. *Bank v. Whitehurst*, 203 N.C. 302, 308, 165 S.E. 793, 795 (1932). Section 45-21.38 provides an exception; it limits certain creditors to recovery only through foreclosure. Under § 45-21.38, if the proceeds from the foreclosure sale do not satisfy the debt obligation, the creditor-mortgagee is left with no other remedy. In other words, it cannot sue on the note—it must look only to the land.

However, § 45-21.38 does not apply to plaintiff. By its very terms, the statute only applies when the deed of trust "secure[s] to the seller the payment of the balance of the purchase price of real property." N.C. Gen. Stat. § 45-21.38 (1996). Thus, the statute only applies to purchase-money mortgages. Nowhere does the record reflect that the loan here was used to acquire the defendants' real property. More significantly, however, § 45-21.38 also applies only where the purchase-money mortgagee is the *seller. Id.* Here, the original mortgagee (North Carolina Federal Savings and Loan Association), from whom plaintiff acquired the Note and Deed of Trust, was not the seller, but a commercial lending institution. Therefore, § 45-21.38 is inapplicable here.

As a result, because the underlying obligation represented by the Note is still valid, and because the anti-deficiency judgment statute does not apply, the trial court was correct in awarding plaintiff a monetary judgment in the amount of the outstanding debt balance, plus interest and late fees.

**[4]** Next, we turn to the validity of the Deed of Trust. Defendants argue that the filing of the Notice of Satisfaction with the Register of Deeds permanently canceled the Deed of Trust such that any attempted reinstatement had no effect. We disagree.

We begin our analysis by noting that no third party has encumbered the property or otherwise relied on the mistakenly-recorded cancellation. Thus, we are dealing only with the effect of the mistake

as between the mortgagor and mortgagee themselves. While our courts have not had occasion to reinstate a mortgage canceled by mistake, they have used their equitable powers to reinstate mortgages canceled for other reasons. *See, e.g., Monteith v. Welch,* 244 N.C. 415, 94 S.E.2d 345 (1956) (cancellation by unauthorized person); *First Financial Savings Bank v. Sledge,* 106 N.C. App. 87, 415 S.E.2d 206 (1992) (cancellation procured by fraud). Furthermore, courts in other jurisdictions have applied general principles of equity to reinstate mortgages that were canceled due to mistake. *See, e.g., Taylor v. Jones,* 194 So. 2d 80 (Ala. 1967); *United Serv. Corp. v. Vi-An Constr. Corp.,* 77 So. 2d 800 (Fla. 1955); *Westgard v. Farstad Oil, Inc.,* 437 N.W.2d 522 (N.D. 1989). As one leading commentator summarized, "[w]here formal release has been obtained by fraud, misrepresentation, or mistake, equity may decree a cancellation of it and reinstate the mortgage." 4 Richard R. Powell, *Powell on Real Property* § 37.33[2], at 37-228 (1999). We feel the equities in this case warrant that the Deed of Trust involved here be reinstated. Defendants admitted they never paid off the underlying debt; plaintiff realized its error and took steps to correct it in a timely fashion; the Reinstatement of Mortgage was recorded by plaintiff with the Register of Deeds only three weeks after it was mistakenly canceled; and no third party relied on the mistaken cancellation in the interim. Accordingly, the trial court did not err in reinstating the Deed of Trust.

**[5]** Finally, defendants argue that, notwithstanding the validity of the Note and Deed of Trust, plaintiff is not entitled to *enforce* either of these instruments. In order to enforce an instrument, our statutes require that the claimant be either (1) a holder of the instrument, (2) a nonholder with possession of the instrument who has the rights of a holder, or (3) one attempting to enforce the instrument pursuant to N.C. Gen. Stat. § 25-3-309 or § 25-3-418(d). N.C. Gen. Stat. § 25-3-301 (1995). Of these, the only possible theory that applies to plaintiff is that it is a "holder" of the instrument. Holder is defined as:

> the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession.

N.C. Gen. Stat. § 25-1-201(20) (1995). Defendants argue that plaintiff forfeited its status as holder when it turned over possession of the instruments to defendants. However, defendants' argument is overly technical and places undue weight on the element of physical possession. In construing the statutory definition of holder, this Court

has previously stated, "[T]he mere absence of the note from the owner's possession does not defeat his right to bring the action to enforce the terms of the note." *Good v. Good*, 72 N.C. App. 312, 315, 324 S.E.2d 43, 45, *disc. review denied*, 313 N.C. 600, 330 S.E.2d 609 (1985). White and Summers, the leading commentators on the UCC, clarified: "When the obligor has possession, the party suing on the instrument has to overcome a presumption that the instrument was discharged. Proof of the fact that the debtor never satisfied the underlying obligation . . . can meet this burden." 2 James J. White & Robert S. Summers, *Uniform Commercial Code: Practitioner Treatise Series* § 16-13, at 134-35 (4th ed. 1995). Plaintiff has met that burden here and thus is entitled to enforce both the Note and Deed of Trust.

Additionally, we must point out that the status of holder is only significant if the creditor is attempting to enforce the *instrument* itself. N.C. Gen. Stat. § 25-3-301 (1995). Because we have held that the underlying obligation was not discharged, plaintiff (as payee of defendants' debt), could—and did—also sue on the underlying obligation. Thus, plaintiff need not rely solely on the law of negotiable instruments to recover this debt; it can also recover under general contract law. Accordingly, defendants' final argument is rejected.

Affirmed.

Judges MARTIN and SMITH concur.