In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-054 CV


____________________



TEXAS COMMUNITY BANK, N.A., SCOTT A. CARLISLE


and DOCK HI, L.L.C., Appellants



V.



WITTE INVESTMENT GROUP, LTD., Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 03-03-02052-CV






MEMORANDUM OPINION


 This appeal involves four parties and a 24.267-acre tract of land located in
Montgomery County, Texas. (1) Appellants Scott A. Carlisle and Dock Hi, L.L.C. ("Dock Hi")
appeal a final judgment from a bench trial, incorporating a partial summary judgment,
rendered in favor of appellee Witte Investment Groups, Ltd. ("Witte"). The partial summary
judgment and the final judgment found Carlisle and Dock Hi jointly and severally liable for
the balance owed on a wraparound promissory note ("Carlisle note") relating to the purchase
and sale of 24.267 acres of land. Carlisle and Dock Hi contend Dock Hi did not assume
liability on the Carlisle note, and Witte is not entitled to judgment on the note because the
note and deed of trust lien were properly discharged and released. Appellant Texas
Community Bank, N.A. ("TCB") appeals the trial court's final judgment which declared
Witte's vendor's lien superior to TCB's deed of trust lien. TCB asserts the status of the real
property records did not put it on inquiry notice and as a result, TCB obtained its lien as a
bona fide mortgagee. The three appellants further challenge the trial court's judgment
finding them jointly and severally liable to Witte for attorney's fees. 

 We hold the evidence is legally and factually sufficient to support the trial court's
judgment that found Carlisle and Dock Hi were jointly and severally liable to Witte for the
Carlisle note; a recorded release of Witte's vendor's lien was invalid; TCB was not a bona
fide purchaser; and Carlisle, Dock Hi, and TCB were liable for attorney's fees. The
judgment is affirmed.

 The material facts of this case are not in dispute; thus, this case turns on the legal
consequences of these facts. In June 1999, Witte sold Carlisle 24.267 acres of land in
exchange for the Carlisle note, a wraparound promissory note in the principal sum of
$179,000, and secured by a vendor's lien and deed of trust. (2) With this wraparound financing
arrangement, the Carlisle note wrapped an outstanding first lien mortgage in favor of
OmniBank, N.A. There were no other liens on the property when Witte sold the property to
Carlisle. 

 In July 2000, Carlisle conveyed the property to his company, Dock Hi, by executing
a warranty deed. The warranty deed provides that Dock Hi "does not assume payment of the
note or liability under any instrument securing it." Royce Witte, the president and general
partner of Witte Investment Group, Ltd., expressly approved of the conveyance by signing
the warranty deed. Witte Investment Group, Ltd. was the holder of a vendor's lien. 
Contemporaneously with the conveyance of the property, Dock Hi executed a deed of trust
to secure assumption in favor of Carlisle. The deed of trust to secure assumption provides,
" Beneficiary [Carlisle] conveyed the property to Grantor, [Dock Hi] who as part of the
consideration promised to pay the [Carlisle] note assumed and to be bound by the deed of
trust assumed." 

 Witte owed Lincoln Feed & Fertilizer Service, Inc. ("Lincoln") a debt unrelated to the
transactions in this case. On March 27, 2001, Witte assigned the Carlisle note and
transferred the vendor's lien to Lincoln by two instruments, and Lincoln recorded the
assignment and transfer on May 1, 2001. On April 6, 2001, after the Lincoln assignment but
before it was recorded, Witte collaterally assigned the same Carlisle note and vendor's lien
to OmniBank to secure another debt unrelated to the outstanding first lien mortgage, and 
OmniBank recorded this assignment on April 17, 2001. Witte eventually satisfied both of
the unrelated debts to Lincoln and OmniBank. Lincoln executed a "Release of Judgment
Lien,"recorded in December 2001, that acknowledged Witte's full and final payment of its
debt. However, Witte did not obtain an express reassignment of the Carlisle lien and note
from Lincoln. 

 After OmniBank threatened to foreclose its first lien on the property, Dock Hi sought
financing from a third party, First Bank of Conroe, to buy out OmniBank's first lien position. 
To facilitate the closing on the loan and to issue a title insurance policy, the title company
prepared a "Release of Lien," and in September 2002, Lincoln executed the "Release of
Lien," which stated that Lincoln, as the "legal and equitable owner and holder" of the
Carlisle note, "for and in consideration of full and final payment of the aforesaid [Carlisle]
note, has released and discharged, and by these presents does hereby release and discharge
the . . . property [i.e. the 24.267 acres] from all liens and security interests held by the
undersigned securing said indebtedness." In October 2002, after receiving full payment on
the debts owed by Witte from the closing with First Bank of Conroe, OmniBank executed
two documents: (1) a "Reassignment of Note and Lien" which reassigned the Carlisle note,
the vendor's lien retained in the deed, and the deed of trust to Witte; and (2) a "Release of
Vendor's Lien and Deed of Trust" which released OmniBank's first lien mortgage on the
property. All three closing documents were recorded in the real property records of
Montgomery County.

 Carlisle, acting as a Dock Hi representative, sought a loan from TCB to finance a
development project on the subject property. TCB retained the services of a title company
that provided TCB with a title commitment regarding the property at issue. Ultimately, TCB
loaned Dock Hi $360,000 and obtained a deed of trust lien on the property. TCB, Carlisle,
and Dock Hi contend TCB's deed of trust lien is the first lien on the property. 

 On or about December 26, 2002, Dock Hi made a payment to Witte, but after
receiving assurances from the first title company that Lincoln's release terminated any
liability of Carlisle or Dock Hi to Witte on the Carlisle note, Dock Hi stopped payment on
the check and informed Witte of the Release of Lien. Thereafter, Witte filed this action 
seeking, inter alia, a declaratory judgment that Lincoln's release of the Carlisle note was
void ab initio; that Witte retains a priority lien on the property; and TCB's lien on the
property was void or subordinate to Witte's lien. Witte also sought a declaration that Carlisle
remained obligated on the Carlisle note and had defaulted on the note. Witte also sued
Carlisle and Dock Hi for breach of contract and sought to recover the remaining principal
balance on the note, accrued interest, and attorney's fees. 

 Witte filed a motion for partial summary judgment in which he sought judgment on
the promissory note against Carlisle and Dock Hi, jointly and severally. Witte's evidence
included the warranty deed with vendor's lien, which was executed when Carlisle purchased
the land from Witte; the deed of trust; the Carlisle note; the warranty deed conveying the
property from Carlise to Dock Hi; and the deed of trust to secure assumption that Dock Hi
executed in favor of Carlisle. Witte submitted Carlisle's deposition, in which Carlisle
testified that he remained liable on the note and the note had not been fully paid. Witte also
presented Royce Witte's affidavit detailing payments received from Carlisle and Dock Hi,
the remaining balance due on the note, and accrued interest. The trial court granted partial
summary judgment ordering Carlisle and Dock Hi to pay Witte the remaining balance on the
note together with post-default interest. 

 The case proceeded to a bench trial to determine the validity of the Carlisle note in
light of the Lincoln release and the priority of liens as between Witte and TCB. The trial
court rendered a final judgment incorporating its partial summary judgment and issued
findings of fact and conclusions of law. In the final judgment, the trial court ordered that,
inter alia, (1) Carlisle remained liable on the Carlisle note because the note was not validly
released; (2) Carlisle and Dock Hi were jointly and severally liable to Witte for the remaining
principal balance on the Carlisle note, together with post-default interest; (3) Carlisle, Dock
Hi, and TCB were jointly and severally liable to Witte for attorney's fees; (4) Witte retained
a valid lien on the property and held the primary lien position; and (5) TCB's lien was
subordinate to Witte's lien. Carlisle, Dock Hi, and TCB appeal the trial court's final
judgment. 

Standard of Review

 In an appeal from a bench trial, a trial court's findings of fact have the same force as
a jury's verdict upon jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991). When the trial court acts as a fact finder, we review its findings of fact under
legal and factual sufficiency standards. Id. If an appellant challenges the legal sufficiency
of the evidence on an issue on which he did not have the burden of proof, the appellant must
demonstrate there is no evidence to support the adverse finding. See Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983). We must consider evidence favorable to the finding if a
reasonable fact finder could, and disregard evidence contrary to the finding unless a
reasonable fact finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
Anything more than a scintilla of evidence is legally sufficient to support the finding. Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). More than a scintilla of
evidence exists if the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins.
Co. of Pittsburgh, Pa., 77 S.W.3d 253, 262 (Tex. 2002). 

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which the appealing party did not have the burden of proof, the appellant must
demonstrate there is insufficient evidence to support the adverse finding. Croucher, 660
S.W.2d at 58. We must weigh all of the evidence in support of and contrary to the finding. 
See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). We will set aside a verdict only if the
evidence is so weak or the finding is so against the great weight and preponderance of the
evidence that the verdict is clearly wrong and unjust. Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001).

 We evaluate legal conclusions as a legal question. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). While an appellant may not challenge a trial
court's conclusions of law for factual insufficiency, we may review the trial court's legal
conclusions drawn from the facts to determine their correctness. Id.

Carlisle's and Dock Hi's Issues

Assumption of Liability

 Carlisle and Dock Hi assert ten issues and argue generally that Dock Hi did not
assume liability for the Carlisle note and deed of trust; the note and deed of trust were validly
released; and the trial court improperly awarded Witte attorney's fees. (3) In their first issue,
Carlisle and Dock Hi assert the defense of estoppel by contract or deed. Specifically, they
contend that Witte is estopped from claiming Dock Hi assumed liability on the Carlisle note,
and Witte may not claim ownership of the note because these positions are contrary to the
provisions contained in the warranty deed and the instruments that assigned the note and
transferred the lien to Lincoln. 

 A party asserting an affirmative defense in a bench trial must request findings in
support thereof to avoid waiver. Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co., 640
S.W.2d 629, 630 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). If the trial court's
findings do not include any element of the defense asserted, the party relying upon that
defense must request additional findings to avoid waiver of that defense on appeal. Id. "An
express finding of fact cannot extend by implication to cover independent grounds of
defense." Id. 

 In this case, the trial court's findings of fact and conclusions of law establish Witte's
cause of action against Dock Hi for liability on the Carlisle note based upon the deed of trust
to secure assumption. Although the trial court concluded that Carlisle and Dock Hi failed
to establish the affirmative defense of estoppel, the trial court's findings did not establish any
element of estoppel by contract or deed. (4) Carlisle and Dock Hi did not file a request for
additional or amended findings of fact and conclusions of law. Accordingly, we hold
Carlisle and Dock Hi have waived any issue on appeal regarding the affirmative defense of
estoppel by contract or deed. Issue one is overruled.

 In their second and third issues, appellants claim the evidence is legally and factually
insufficient to support the trial court's ruling that Dock Hi assumed liability of the Carlisle
note. The record indicates that Carlisle, Dock Hi's other principals, and Royce Witte
participated in a meeting in connection with Dock Hi's purchase of the property. At this
meeting, Witte agreed to allow the property to be transferred to Dock Hi, but stipulated that
Carlisle would not be released from his liability on the Carlisle note. Carlisle agreed to
remain personally liable on the note. 

 The warranty deed conveying the property to Dock Hi and the deed of trust that
secured the assumption were drafted at this meeting and executed on the same day. The
warranty deed provided that Dock Hi "does not assume payment of the note or liability under
any instrument securing it." Royce Witte expressly approved of this provision by signing the
warranty deed on Witte Investment Groups, Ltd.'s behalf. The deed of trust to secure
assumption contains the following provision: "By [warranty] deed dated the same as this
instrument, Beneficiary [Carlisle] conveyed the property to Grantor [Dock Hi], who as part
of the consideration promised to pay the [Carlisle] note assumed and to be bound by the
deed of trust assumed." (emphasis added). Witte's signature does not appear on this
document. However, Witte implicitly approved of Dock Hi's assumption of liability by
accepting payments from Dock Hi's principals and by filing suit against Dock Hi for the
remaining balance on the note. (5) Witte also expressed his approval at the meeting. Although
the warranty deed and deed of trust to secure assumption appear to conflict, Carlisle testified
that when the Carlisle note was transferred to Dock Hi, Dock Hi became responsible for the
note and Dock Hi's principals agreed to pay the note. Carlisle and Witte both testified that
Dock Hi and its principals did in fact make payments to Witte on the Carlisle note. In light
of Dock Hi's express promise to pay the Carlisle note and the subsequent payments to Witte,
the trial court could rationally disregard the provision in the warranty deed disclaiming Dock
Hi's liability. Thus, we hold the evidence was legally and factually sufficient to support the
trial court's ruling that Dock Hi is jointly and severally liable for the Carlisle note. Issues
two and three are overruled.

Validity of the Release of Lien

 Carlisle and Dock Hi's fourth, fifth and sixth issues essentially assert that Witte was
not entitled to judgment on the Carlisle note because Lincoln, as the holder of the note and
vendor's lien, executed a valid release of the lien thereby discharging the note. Appellants
argue Lincoln's release was valid because the note and lien were absolutely assigned to
Lincoln and did not constitute collateral. (6) 

 To determine whether Lincoln's release was valid, we must first determine whether
Lincoln was the holder of the Carlisle note. The instrument transferring the lien to Lincoln
provides, "For value received Holder [Witte] of the [Carlisle] note and lien transfers them
to Transferee [Lincoln]. . . ." The instrument assigning the Carlisle note to Lincoln states
that "the undersigned [Witte] assigns to Lincoln . . . the [Carlisle] note, together with all liens
and the superior title held by the undersigned securing payment of the note." These
documents appear to operate as absolute assignments of the note and the lien.

 "An assignment, though absolute in form, can be shown by parol evidence to be
intended only as collateral security." Island Recreational Dev. Corp. v. Republic of Tex. Sav.
Ass'n, 710 S.W.2d 551, 556 (Tex. 1986). An assignor's intent to treat the assignment as
security for a debt may also be shown by a separate written instrument. Hillcrest State Bank
v. Bankers Leasing Corp. of Tex., 544 S.W.2d 727, 728 (Tex. Civ. App.--Dallas 1976, writ
ref'd n.r.e.).

 At trial, Royce Witte's testimony indicates he assigned the Carlisle note to Lincoln
as collateral to secure the unrelated debts he owed Lincoln. Lincoln recorded a release of
judgment lien which stated Witte made a full and final payment of the unrelated debt in the
amount of $15,219.26. Witte executed a security agreement in favor of Lincoln that
identified the collateral as "Wraparound Promissory Note, dated June 25, 1999, in the
original principal amount of $179,000, executed by Scott A. Carlisle, payable to WITTE
INVESTMENT GROUP, LTD., secured by a Vendor's Lien retained in Deed. . . ." The
instrument further provides, "Debtor [Witte] grants to Secured Party [Lincoln] a security
interest in the collateral and all its proceeds to secure payment and performance of Debtor's
obligation in this security agreement. . . ." We find sufficient evidence, both legally and
factually, to support the trial court's holding that Witte merely collaterally assigned the
Carlisle note to Lincoln for an unrelated debt. 

 We next determine whether Lincoln executed a valid release of the lien. "A collateral
assignment continues in force until the debt for which it is security is paid in full." Olshan
Lumber Co. v. Bullard, 395 S.W.2d 670, 673 (Tex. Civ. App.--Houston 1965, no writ). 
Witte collaterally assigned the Carlisle note twice: to Lincoln in March 2001 and then to
OmniBank in April 2001. In December 2001, Witte satisfied its debt to Lincoln. In October
2001, Witte satisfied most of its unrelated debt to OmniBank and paid the remaining balance
within a few months. Once Witte paid its debts to OmniBank and Lincoln, the collateral
assignments were no longer in effect as to OmniBank and Lincoln, and neither had any rights
to the remaining balance on the Carlisle note because Witte regained his full rights as the
holder of the note. See generally Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769, 775
(1957) (explaining that any balance remaining on a collateral assignment after the debtor has
paid his debts to the assignee belongs to the debtor). 

 A person entitled to enforce an instrument may discharge the obligation of a party to
pay the instrument. See Tex. Bus. & Com. Code Ann. § 3.604 (Vernon Supp. 2006). The
Fourteenth Court of Appeals, relying on former section 3.605 explained, "'A cancellation
made unintentionally, or under a mistake, or without the authority of the holder is
inoperative. Hence an unintentional or mistaken cancellation of an instrument or a signature
thereto effects no discharge thereof.'" Gibraltar Sav. Ass'n v. Watson, 624 S.W.2d 650, 653
(Tex. App.--Houston [14th Dist.] 1981, no writ) (quoting R. Anderson, Uniform Commercial
Code § 3.501 - § 8.406 (2d ed. 1971)). At trial, Witte testified that he did not authorize
Lincoln to execute the release of lien, which purported to discharge the Carlisle note.
Because Witte was the holder of the Carlisle note when Lincoln executed its release and
Witte did not authorize Lincoln to cancel the note, Lincoln's release was inoperative. See
id. The evidence is legally and factually sufficient to establish that Lincoln's release of the
lien and discharge of the note was invalid. Issues four, five, and six are overruled.

Accord and Satisfaction

 In issue seven, Carlisle and Dock Hi argue that the Carlisle note was fully paid
according to its terms. Carlisle and Dock Hi contend the Carlisle note provides that if there
is a default in the underlying debt (i.e. the first lien mortgage held by OmniBank), then the
payment of that underlying debt constitutes payment of the Carlisle note. The provision upon
which Carlisle and Dock Hi rely provides the following:

 Included in the principal amount of this Note is the unpaid balance left due and
owing on that one certain Promissory Note (the "Underlying Debt") [i.e. the
first lien mortgage OmniBank held on the property]. . . payable to the order of
OMNIBANK, N.A. . . . The Beneficiary herein shall make all payments on the
Underlying Debt as they become due and payable . . . . In the event there is a
default in the payment of . . . Underlying Debt, and/or the terms and conditions
of the lien instruments securing same, then the Maker [Carlisle] or other owner
of the . . . property may correct said default or defaults by payment thereof, and
the amount of any funds expended in such connection shall be considered the
payment of this Note and any payment so made and expenses incurred and
paid in connection therewith (including attorney's fees) shall be credited and
applied to this Note. (emphasis added) 


 In an effort to harmonize and give effect to all of the provisions of a written contract,
we examine and consider the entire writing so that no provision will be rendered
meaningless. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). No single
provision in an instrument, taken alone, will be given controlling effect; rather, all provisions
must be considered with reference to the whole instrument. Id. 

 The record indicates that Witte defaulted on his payments to OmniBank on the
underlying debt and OmniBank threatened to foreclose. In connection with refinancing the
property, Dock Hi paid OmniBank the remaining balance due on the underlying debt Witte
owed to OmniBank, and the bank released its first lien on the property. Carlisle and Dock
Hi argue "any funds expended" to correct any default on the underlying note, would "be
considered the payment of this Note." Thus, according to appellants, Dock Hi's discharge
of the underlying debt would discharge the Carlisle note. We find this argument
unpersuasive. The next provision clearly indicates that any payments made by the owner of
the property to cure any default in the underlying debt "shall be credited and applied to this
Note." Thus, in reading the two provisions together, we conclude that any payment Dock Hi
made on the underlying debt would also be considered a payment of the Carlisle note and
would be credited as a payment on the note. The record supports this conclusion because
Royce Witte testified he credited Dock Hi's payment on the OmniBank debt as a payment
on the Carlisle note. We find that Dock Hi's payment discharging Witte's original debt to
OmniBank did not wholly discharge the Carlisle note. Issue seven is overruled. 

Attorney's Fees

 In issue eight, Carlisle and Dock Hi assert the trial court erred in awarding attorney's
fees against Scott Carlisle and/or Dock Hi because Witte did not seek nor was he properly
awarded declaratory relief against appellants. Witte does not have to obtain a declaratory
judgment against Carlisle and Dock Hi to recover attorney's fees. A party may recover
reasonable attorney's fees from an individual or corporation if the claim is based on an oral
or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997). The
Carlisle note contains the following relevant provisions regarding attorney's fees:

 Maker [Carlisle] hereby agrees to pay all expenses incurred, including
reasonable attorney's fees, all of which shall become a part of the principal
hereof, if this Note is placed in the hands of an attorney for collection, or if
collected by suit or through any probate, bankruptcy or any other legal
proceedings. 

Thus, Carlisle agreed to pay any reasonable attorney's fees incurred by Witte if the balance
of the note was collected by instituting legal proceedings. This provision is enforceable
against Dock Hi, as we have found Dock Hi assumed liability under the note by assuming 
payment of the note. Thus, because Carlisle and Dock Hi are jointly and severally liable for
the note, the trial court properly awarded attorney's fees as to these parties. Issue eight is
overruled.

 Issue nine alleges the evidence is legally and factually insufficient to show that Witte
presented its claim to appellants pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.002
(Vernon 1997). To recover attorney's fees on a written contract, the plaintiff must present
the claim to the opposing party. Llanes v. Davila, 133 S.W.3d 635, 641 (Tex. App.--Corpus
Christi 2003, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2)). The
plaintiff must plead and prove that he presented a contract claim to the opposing party and
the opposing party failed to tender performance. Llanes, 133 S.W.3d at 641. However, a
plaintiff who has pleaded all conditions precedent to recover need not provide evidence of
presentment unless the opposing party specifically denies that all conditions precedent have
occurred or been performed. See ExxonMobil Corp. v. Valence Operating Co., 174 S.W.3d
303, 319 (Tex. App.--Houston [1st Dist.] 2005, pet. denied); White Budd Van Ness P'ship
v. Major-Gladys Drive Joint Venture, 798 S.W.2d 805, 816 (Tex. App.--Beaumont 1990,
writ dism'd); Tex. R. Civ. P. 54. Witte's pleading contains the following provision: "Witte
. . . would show that it has fully satisfied all conditions precedent to the maintenance of the
action and to the relief sought herein." A review of the answers filed by Carlisle and Dock
Hi reveal appellants failed to specifically deny that conditions precedent had not been met. 
Thus, Carlisle and Dock Hi's did not preserve their presentment issue for appeal. (7) See
Llanes, 133 S.W.3d at 641; Tex. R. Civ. P. 54. We overrule issue nine. 

 Appellants tenth issue states that genuine issues of material fact existed regarding
whether Dock Hi assumed liability on the Carlisle note and whether Lincoln properly
released the lien. While the court entered a partial summary judgment as to liability for the
balance of the Carlisle note, further evidence was offered and heard on these issues during
the bench trial, and the trial court entered findings of fact and conclusions of law with regard
to each of these issues. Issue ten is overruled. The judgment as it relates to Carlisle and
Dock Hi is affirmed.Texas Community Bank's Issues

Priority of Liens

 In TCB's first and second issues, it argues the trial court erred in holding Witte's lien
on the property was superior to TCB's lien. TCB argues the real property records revealed
that OmniBank's lien, which was recorded first, was reassigned to Witte, and Lincoln's lien,
which was recorded after OmniBank's lien, was released. TCB contends that once
OmniBank reassigned the lien to Witte, Lincoln then became the owner of the lien under the
theory of after-acquired title. TCB concludes that because Witte did not obtain a
reassignment from Lincoln after Witte satisfied its debt to Lincoln, the release, although
erroneously signed, was valid on its face. 

 Assignments, whether legal or equitable, take effect in the order they are made. 
Kirkpatrick v. Great Am. Ins. Co., 299 S.W. 943, 945 (Tex. Civ. App.--Waco 1927, no writ). 
Priority in rank between successive assignees is generally given to the assignee who first
received the assignment, even when the first assignment is not recorded. See Am. Employer's
Ins. Co. v. Roddy, 51 S.W.2d 280, 283 (Tex. Com. App. 1932, no writ). In this case, Witte
collaterally assigned the Carlisle note and lien to Lincoln on March 27, 2001, and collaterally
assigned the same note to OmniBank on April 6, 2001. Thus, TCB's characterization of
Lincoln's lien as second in time is incorrect. (8) 

 As mentioned, once Witte repaid its obligations to Lincoln and OmniBank in 2001,
the collateral assignments were no longer effective and Witte regained his rights under the
Carlisle note. In 2002, after Dock Hi's payment on Witte's original mortgage discharged
Witte's original mortgage debt with OmniBank, OmniBank released its first lien on the
property. As a result, the Carlisle note and lien no longer "wrapped" OmniBank's first lien,
and Witte's lien took first priority. Thus, when TCB obtained its lien in 2003, the lien was
necessarily subordinated to Witte's first lien. We hold the evidence is legally and factually
sufficient to support the trial court's ruling that Witte's lien was superior to TCB's lien. 
Issues one and two are overruled.


Bona Fide Mortgagee

 In its third and fourth issues, TCB contends the evidence is legally insufficient to
support the trial court's finding that TCB was not a bona fide mortgagee because the real
property records did not put it on inquiry notice. (9) A bona fide mortgagee must acquire its
interest in property in good faith, for value, and without notice of the claim or interest of a
third party. Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex. 1983). "'[A]
purchaser is bound by every recital, reference and reservation contained in or fairly disclosed
by any instrument which forms an essential link in the chain of title under which he clams.'"
Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982) (quoting
Wessels v. Rio Bravo Oil Co., 250 S.W.2d 668 (Tex. Civ. App.--Eastland 1952, writ ref'd)). 
A purchaser is put on inquiry of any description, recital of fact, or reference to other
documents and "'is bound to follow up this inquiry, step by step, from one discovery to
another and from one instrument to another, until the whole series of title deeds is exhausted
and a complete knowledge of all the matters referred to and affecting the estate is obtained.'"
Id. (quoting Loomis v. Cobb, 159 S.W. 305, 307 (Tex. Civ. App.--El Paso 1913, writ ref'd)).

 The real property records indicate the same vendor's lien and note Witte assigned to
Lincoln was subsequently assigned to OmniBank as collateral for an unrelated debt. The
records further reveal that OmniBank reassigned the Carlisle note and lien to Witte and,
unlike Lincoln, OmniBank did not discharge the balance owed on the note. The fact that
OmniBank reassigned the Carlisle note and lien to Witte sufficiently put TCB on notice that
Witte might claim an interest in the property at issue. This is true regardless of whether
Lincoln's release appeared valid on its face because this conflict regarding the status of
Witte's lien on the property required TCB to inquire as to the real status of the lien and
follow up on this inquiry until it obtained complete knowledge of all the matters affecting
the lien. We hold there was legally and factually sufficient evidence that TCB did not obtain
its lien as a bona fide mortgagee. Issues three and four are overruled. 

Attorney's Fees

 In its fifth issue, TCB argues the trial court erred in finding TCB jointly and severally
liable for attorney's fees because Witte's declaratory suit against it was a suit to quiet title
to the property. A trial court has broad discretion to determine whether to award costs and
attorney's fees under the Declaratory Judgments Act. Aquaduct, L.L.C. v. McElhenie, 116
S.W.3d 438, 444 (Tex. App.--Houston [14th Dist.] 2003, no pet.). We review a court's
award of attorney's fees for abuse of discretion. Id. 

 TCB cites Southwest Guaranty Trust Company v. Hardy Road 13.4 Joint Venture, 981
S.W.2d 951 (Tex. App.--Houston [1st Dist.] 1998, pet. denied) for the proposition that
Witte's claim for declaratory judgment is really a suit to quiet title. The Fourteenth Court
of Appeals, deciding a similar issue, has distinguished Southwest Guaranty by noting that the
plaintiff in Southwest Guaranty brought suit to clear title to his property and did not seek to
construe any terms of the relevant lien or deed of trust. See Aquaduct, 116 S.W.3d at 445. 
The Aquaduct court explained that the case before it differed from Southwest Guaranty
because the trial court determined the validity of competing instruments as between two
purported lien holders. See id. The court further noted that the plaintiff's requested relief,
i.e., a declaration that its lien had priority, was not the subject matter of a trespass to try title
action. See id. at 444-45. 

 In this case, TCB's contention that Witte "did not seek to construe any terms of the
various liens, but rather sought to quiet title and remove the cloud on title created by
Appellant TCB's lien," finds no support in the record. Witte filed suit against TCB and
sought a declaration that TCB's lien on the property was void or subordinate to Witte's lien. 
Witte made no claims regarding the status of the title to the property. The trial court
determined the validity of Witte's and TCB's liens and declared that Witte's lien was
superior to that of TCB. We hold the trial court did not abuse its discretion in ordering TCB
to pay Witte's attorney's fees as the instant case was not an action for trespass to try title. 
Issue five is overruled. We affirm the trial court's judgment holding TCB's lien subordinate
to Witte's lien and holding TCB jointly and severally liable on Witte's attorney's fees.

 AFFIRMED. 


 __________________________________

 CHARLES KREGER

 Justice

Submitted on December 15, 2005

Opinion Delivered February 15, 2007


Before McKeithen, C.J., Gaultney and Kreger, JJ.

CONCURRING IN PART, DISSENTING IN PART


 With one exception, I concur with the majority's judgment. I respectfully dissent to
the affirmance of the portion of the trial court's judgment holding Texas Community Bank
"jointly and severally" liable for all of Witte's attorney's fees. The claim against TCB was
essentially a suit to quiet title or remove the cloud on title created by TCB's lien. Attorney's
fees are not available in that type of claim. See S.W. Guar. Trust Co. v. Hardy Road 13.4
Joint Venture, 981 S.W.2d 951, 956-57 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). 
When a declaratory judgment action is redundant to another asserted claim, attorney's fees
are not recoverable under the Declaratory Judgment Act. See Strayhorn v. Raytheon E-Sys.,
Inc., 101 S.W.3d 558, 572-73 (Tex. App.--Austin 2003, pet. denied). 

 Even when the Declaratory Judgment Act supports an award of fees, the award must
be "equitable and just" as well as "reasonable and necessary." Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997). See also, generally, Tony Gullo Motors v. Chapa, No.
04-0961, 2006 Tex. LEXIS 1301, at *27 (Tex. December 22, 2006)("[A] claimant must
segregate recoverable from unrecoverable fees."). I see no basis to hold TCB jointly and
severally liable for Witte's attorney's fees incurred in obtaining a judgment against Carlisle
and Dock Hi for the principal balance of the promissory note. TCB had no obligation to
make the note payments. 


 Attorney's fees are not recoverable in the claim asserted against TCB. That portion
of the trial court's judgment should be reversed, and judgment should be rendered by this
Court that Witte recover no attorney's fees from TCB. 


 _________________________________

 DAVID GAULTNEY

 Justice


Concurrence and Dissent

Delivered February 15, 2007
1. The original lawsuit involved the following seven defendants: (1) Scott A.
Carlisle, (2) Dock Hi, L.L.C., (3) Lincoln Feed and Fertilizer Services, Inc. (4) Texas
Community Bank, N.A., (5) Vogt Engineering, (6) First Surety Title Company, and (7)
Alamo Title Insurance Company. The record indicates the causes of action against
Lincoln Feed and Fertilizer Services, Inc., First Surety Title Company, and Alamo Title
Insurance Company were dismissed on motions for summary judgment. The trial court
conducted a trial with the four remaining defendants. Vogt Engineering is the only
defendant that has not appealed the trial court's judgment. 
2. Witte also sold Carlisle a 3.045-acre tract of land that is not at issue in this
lawsuit. 
3. Although appellants assert "points of error," we will refer to each point of error
as an appellate issue. 
4. Under the doctrine of estoppel by contract or deed, a party to a contract or deed
will not be permitted to take a position inconsistent with its provisions, to the prejudice of
another. See Johnson v. Structured Asset Servs., LLC, 148 S.W.3d 711, 721-22 (Tex.
App.--Dallas 2004, no pet.) (defining estoppel by contract); Moore v. Energy States, Inc.,
71 S.W.3d 796, 799 (Tex. App.--Eastland 2002, pet. denied) (defining estoppel by deed). 
5. Generally, when a purchaser buys land subject to a vendor's lien note and
assumes the payment of the note, the purchaser becomes primarily liable to the holder of
the note if the holder accepts the subsequent purchaser's promise to pay the note. Dansby
v. Stroud, 48 S.W.2d 1018, 1020 (Tex. Civ. App.--Waco 1932, writ ref'd); see also
Chapman v. Crichet, 127 Tex. 590, 95 S.W.2d 360, 364 (1936); Brannin v. Richardson,
108 Tex. 112, 185 S.W. 562, 564 (1916); Carruth v. First Nat'l Bank of Fort Worth, 544
S.W.2d 678, 682-83 (Tex. Civ. App.--Eastland 1976, writ ref'd n.r.e.); Casey v. Watts,
130 S.W.2d 396, 398 (Tex. Civ. App.--Waco 1939, writ dism'd judgm't cor.); Hall v.
Wichita State Bank & Trust Co., 254 S.W. 1036, 1040 (Tex. Civ. App.--Amarillo 1923,
writ ref'd). One means by which a holder may "accept" a purchaser's promise to pay is
by bringing suit against the purchaser. See Strictland v. Higginbotham Bros. & Co., 220
S.W. 433, 436 (Tex. Civ. App.--El Paso 1920, writ dism'd w.oj.). 
6. Issue four states the Carlisle note and lien were released by the holder of the
note. The fifth issue challenges the legal and factual sufficiency of the evidence to
support the trial court's finding that Lincoln's release of the lien was invalid, while issue
six challenges the legal and factual sufficiency of the evidence to support the court's
finding that Witte transferred the lien and assigned the note to Lincoln as collateral. 
Because these issues involve the same set of facts, we review them together.
7. We further note that the Carlisle note expressly waives presentment. 
8. The after-acquired title doctrine does not apply under these facts. See generally
Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 770 (Tex. 1983) (defining the after-acquired title doctrine); see also Gutierrez v. Rodriguez, 30 S.W.3d 558, 560-61 (Tex.
App.--Texarkana 2000, no pet.).
9. We note that this argument is based on TCB's erroneous characterization of the
priority of liens as between Lincoln and OmniBank.